**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| FOX CORPORATION, FOX MEDIA, LLC, AND FOX SPORTS EN ESPAÑOL, LLC, | |
| *Plaintiffs* | Civil Action No. 4:25-mc-02271 |
| v. | |
| MANUEL ARROYO, | |
| *Defendant* | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO VOID JUDGMENT UNDER RULE 60(b)(4)**

Defendant MANUEL ARROYO ("Arroyo") moves the Court to void the foreign judgment (Dkt 1) by Fox Corporation, Fox Media, LLC, and Fox Sports En Español, LLC (the "Plaintiffs" or collectively as "Fox").

## TABLE OF CONTENTS

A.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS         1

B.  STATEMENT OF THE ISSUES PRESENTED         .         .         .         .         2

C.  FACTS         .         .         .         .         .         .         .         .         3

D.  SUMMARY OF THE ARGUMENT .         .         .         .         .         .         6

E.  ARGUMENT .         .         .         .         .         .         .         .         8

    i.         This Court may Determine Proper Service         .         .         .         .         8

    ii.         The NY Case "has a Very Serious Problem" .         .         .         .         10

    iii.         There Is No Personal Jurisdiction Without Proper Service         .         .         11

    iv.         Article 15(3) Does Not Apply to Contempt or Final Judgments         .         13

    v.         Final Judgement         .         .         .         .         .         .         .         15

    vi.         The SDNY Has Not Served the NY Case's Lone Defendant .         .         18

    vii.         This Court has the Final Say .         .         .         .         .         .         19

F.  CONCLUSION         .         .         .         .         .         .         .         .         20

**TABLE OF CITATIONS OF CASES, STATUTES, RULES, AND OTHER AUTHORITIES**

**CASES**

*ABC v. DEF*, No. 24 Civ. 8341, 2024 U.S. Dist. LEXIS 229046, 2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024). . . . . . . . . 17

*Antsy Labs LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Complaint,* 2021 U.S. Dist. LEXIS 241185; 2021 WL 5967613 (S.D.N.Y. 2021) . . . . . . 12

*Baldwin v. Iowa State Traveling Men's Asso.,* 283 U.S. 522 (1931) . . . 20

*be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir.2011) . . . . 3

*Blaney v. West,* 209 F.3d 1027 (7th Cir.2000) . . . . 3

*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc*, 811 F.2d 278 (5th Cir. 1987) . 9, 20

*Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd*., 869 F.2d 34 (2d Cir. 1989) . 19

*Cardell Fin. Corp. v. Suchodolski Assocs.,* 2012 U.S. Dist. LEXIS 188295 (SDNY July 17, 2012) . . . . . . . . . . 18

*Comverse, Inc. v. Am. Telecommc'ns., Inc. Chile S.A.,* 2009 U.S. Dist. LEXIS 14381, 2009 WL 464446 (S.D.N.Y. Feb. 24, 2009) . . . . 18

*Chase Manhattan Bank (Nat'l Asso.) v. South Acres Dev. Co.,* 434 U.S. 236 (1978) 11

*CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474 (S.D.N.Y. 2021) 12

*Cleanspark, Inc., Discovery Growth Fund, LLC, 485 F. Supp. 3d 494 (S.D.N.Y. 2020)* 12

*Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730 (2d Cir. 1980) . . 9, 10, 22

*DeCurtis v. Upward Bound Int'l Inc.*, 2012 U.S. Dist. LEXIS 143295; 2012 WL 4561127 . . . . . . . . . . 12

*Dynegy Midstream Servs. v. Trammochem,* 451 F.3d 89 (2d Cir. 2006) . . 12

*Board of Trustees v. Elite Erectors, Inc*., 212 F.3d 1031 (US Fed. 2000) . . 9, 19

*Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 57 S. Ct. 273, 81 L. Ed. 289 (1937) . . . . . . . . . . 3

*Fox Corp. v. Media Deportes Mex., S. de R.L. de C.V.,* 2026 U.S. Dist. LEXIS 32173 (Feb. 17, 2026) . . . . . . . . . . . . 11, 13, 17, 18

*Fuhrman v. Livaditis*, 611 F.2d 203 (US Fed. 1979) . . . . . . 9

*F.D.I.C. v. Aaronian*, 93 F.3d 636 (9th Cir. 1996) . . . . . 9

*Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389 (5ᵗʰ Cir. 2001) . . 8, 9, 10, 21, 22

*Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.*, 2025 U.S. Dist. LEXIS 216454 (S.D.N.Y. Nov. 5, 2025) . . . . . . . 18

*Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917 (8th Cir. 1998) . . 16

*Indian Head Nat. Bank of Nashua v. Brunelle*, 689 F.2d 245 (1st Cir. 1982) . 9

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) . . . . . . . 20

*Jonas v. Estate of Leven,* 116 F. Supp. 3d 314 (S.D.N.Y. 2015) . . . 7

*Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.,* 694 F. Supp. 3d 374, 384 (S.D.N.Y. 2023) . . . . . . . . . 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) . 7, 12

*Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 90 L. Ed. 185 (1946) . . . . . . . . . 14

*Morris v. Peterson*, 759 F.2d 809 (10th Cir. 1985) . . . . . 9

*New York State NOW v. Terry,* 961 F.2d 390 (2d Cir. 1992) . . . . 18

*OSRecovery, Inc. v. One Groupe Intl, Inc.,* 462 F.3d 87 (2d Cir. 2006) . . 16

*Overnight Blowout LLC v. Shenzhen Kairuijia E-Commerce Co., Ltd.,* No. 25 Civ. 6086, 2025 U.S. Dist. LEXIS 161029 (S.D.N.Y. July 31, 2025) . . . . . 14, 15

*Petroleos Mexicanos v. Crawford Enters., Inc.,* 826 F.2d 392 (5th Cir. 1987) . 16

*Philos Techs., Inc. v. Philos & D, Inc.,* 645 F.3d 851 (7ᵗʰ Cir. 2011). . . 3

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO VOID JUDGMENT UNDER RULE 60(b)(4)**
**Page iv**

*Relational, LLC v. Hodges,* 627 F.3d 668 (7th Cir. 2010) . . . . 3

*SEC v. Capital Growth Co., S.A. (Costa Rica),* 391 F. Supp. 593, 600 (S.D.N.Y. 1974) 13

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi,* 164 F.4th 164 (2d Cir. 2025) 10, 11, 12, 13, 15-18

*Textile Banking Co. v. Rentschler,* 657 F.2d 844 (7th Cir. 1981) . . . . 3

*United States v. Thompson,* 921 F.3d 82 (2d Cir. 2019) . . . . 7

*Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) . . . . . . 14

*Water Splash, Inc. v. Menon,* 581 U.S. 271, 137 S. Ct. 1504, 197 L. Ed. 2d 826 (2017) 14

*1963 v. Stein,* 897 F.2d 653 (2d Cir. 1990) . . . . . . 13

## STATUTES

28 USC § 1963 . . . . . . . . . 1, 8

## RULES

Rule 4(f) . . . . . . . . . . 1, 7, 10, 11, 14, 15

Rule 55 . . . . . . . . . . 10

Rule 60(b)(4) . . . . . . . . . 2, 3, 8, 9, 21

Rule 65 . . . . . . . . . . 2

## OTHER AUTHORITIES

*The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Nov. 15, 1965, T.I.A.S. No. 6638, 20 U.S.T. 361, 659 U.N.T.S. 163 . . . . . . . 1, 2, 11, 6, 7, 13-18, 20, 21

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO VOID JUDGMENT UNDER RULE 60(b)(4)**

*Maggie Gardner, Parochial Procedure*, 69 Stan. L. Rev. 941, 10000 (2017)      .      11

*13 Moore's Federal Practice* § 65.20 (3d ed. 2025)   .      .      .      .      .      14

*13 Moore's Federal Practice* § 65.21[2] (3d ed. 2025)      .      .      .      .      14

**APPENDIX:** The Appendix with the attached exhibits in support of this Motion is filed separately. All exhibits in the Appendix are incorporated herein by reference. A courtesy copy of the Appendix was sent, via FedEx, to Chambers, Room 3716, on the day of filing, per Judge Ellison's Court Procedures Rule 8. The courtesy copy is identical to the filed Appendix; there are no highlights, no annotations, no "dog ears," and no handwriting.

## A.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

1.     This case is a 28 USC § 1963 registration of Fox's judgment that was entered by another district court, the Southern District of New York. (The "SDNY"). The basis for the final judgment (Dkt 1) was a contempt order that "found" Manuel Arroyo, a non-party in the underlying case and the defendant herein, to have violated an *ex parte* temporary restraining order. (The "TRO").

2.     The contempt order in the underlying case was against Arroyo, a Mexican citizen, two other non-parties, and the lone defendant, Media Deportes Mexico, S. de R.L. de C.V. ("MDM"). Fox then moved to have the contempt sanctions against Arroyo included in a final judgment so Fox may begin collection of the same. Fox did not seek a judgment against the defendant or the other non-parties, only Arroyo.

3.     The only attempted "service" in the entirety of the SDNY case was by email.[1] On information and belief, no one has been served as required under Rule 4(f)(1) for service on an individual in a foreign country. Since the SDNY defendant and Arroyo are citizens of Mexico, and Mexico is a signatory to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, often referred to as the Hague Convention (the "Hague"), the Hague process for service is required.

4.     The final judgment against Arroyo is for $5,800,000.

5.     To put this in context, the SDNY entered a TRO without notice to any party, then the SDNY held a preliminary injunction *and contempt order* with only attempted notice to the

---

[1] Plaintiffs have initiated, but not completed, service on Defendant MDM pursuant to the Hague. SDNY Dkt 163 (Lee Decl.) ¶ 6. (Ex 1)

parties *via email*. The SDNY then imposed a $200,000-per-day contempt sanction against MDM and each of the non-parties, including Arroyo, for alleged violations of the TRO. Fox's preliminary injunction was then granted.

6.      The injunctive issues are subject to Rule 65, which permits notice (such as email if ordered). But a contempt order is not an injunction and requires service. There is no service in the SDNY case, only, purportedly, email  notice.

7.      Since MDM and Arroyo were never served via the Hague at the time of the contempt order (or at any time), the SDNY court lacked proper service and, by extension, personal jurisdiction over MDM or Arroyo.

8.      There is a lot of hair on this, to cite an old idiom. There was no service on any party prior to the entry of the contempt sanctions, nor since. There has only allegedly been notice via email to the parties. The result is that the SDNY entered a nearly $6 million final judgment against a Mexican citizen, Arroyo, based solely on email notice that Fox claims he actually received. That is harsh and illegal.

9.      District courts have the authority to entertain motions challenging the validity of another district court's judgment using Rule 60(b)(4).

## B.      STATEMENT OF THE ISSUES PRESENTED

10.      The main issue before this Court is whether email is proper service upon Mexican citizens, who have not been served via the Hague, for a contempt motion and hearing, and ultimately the entry of a final judgment based upon the same.

11.      Did the SDNY court have personal jurisdiction over the defendant MDM when the contempt order was entered? If not, the contempt order is void, and thus the Judgment against

Arroyo should be voided.

12.     Did the SDNY court have personal jurisdiction over Arroyo? If not, the TRO,

preliminary injunction, the contempt order, and the Judgment against Arroyo are void.

13.     The standard of review under Rule 60(b)(4):

The standard of review for denial of a Rule 60(b)(4) motion is          .          .

. As we explained in *Blaney v. West,* district courts have "little leeway"
under Rule 60(b)(4): "Once a district court decides that the underlying judgment is
void, the trial judge has no discretion and must grant the appropriate Rule 60(b)
relief," and it is "a per se abuse of discretion to deny a Rule 60(b)(4) motion when
the trial court has no jurisdiction over the action." 209 F.3d 1027, 1031 (7th Cir.
2000); accord, *be2 LLC v. Ivanov,* 642 F.3d 555, 2011 WL 1565490, at *2 (7th Cir.
April 27, 2011) (reversing denial of relief); *Relational, LLC v. Hodges,* 627 F.3d
668, 671 (7th Cir. 2010) (affirming denial of relief). A judgment entered against a
defendant over whom the court had no jurisdiction is void, and no court has the
discretion to refuse to vacate that judgment once it recognizes its lack of
jurisdiction. *See Textile Banking Co. v. Rentschler,* 657 F.2d 844, 850 (7th Cir.
1981).

*We see no reason to treat a lack of jurisdiction caused by the improper service of
process any differently from a lack of jurisdiction caused by the defendant's lack of
sufficient minimum contacts with the forum.* A court "without personal jurisdiction
of the defendant" is wholly "without power to proceed to an adjudication" binding
on that defendant, regardless of the specific reason such jurisdiction is lacking. *See
Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 381, 57 S. Ct. 273, 81 L.
Ed. 289 (1937). A court has no discretion to deny a Rule 60(b)(4) motion to vacate
a judgment entered against a defendant over whom the court lacks personal
jurisdiction, regardless of the specific reason such jurisdiction is lacking. (Emphasis
supplied)

*Philos Techs., Inc. v. Philos & D, Inc.,* 645 F.3d 851, 854-55 (7th Cir. 2011).

## C.     FACTS

14.     Plaintiffs filed suit against the defendant MDM on August 14, 2025. SDNY Dkt 1.

(Ex 2) That same day, Plaintiffs filed an emergency motion for a temporary restraining order

("TRO") and an order to show cause regarding a preliminary injunction. SDNY Dkt 8, 9. Exs 3,

4. The Court granted that emergency motion the same day (August 14, 2025), enjoining:

> Defendant and anyone acting in concert with Defendant … from:
>
> using the Fox Sports Trademarks in Mexico;
>
> using the U.S. Fox Sports marks in the United states;
>
> pursuing any legal or regulatory action relating to the Fox Sports Trademarks in Mexico …; and
>
> taking any action to disrupt, hinder, or undermine Fox's business relationships with [various identified entities].

SDNY Dkt 29. Ex 5.

15.    Five days later, on August 19, 2025, Plaintiffs moved for an Order to show cause as to why defendant MDM should not be held in Contempt. SDNY Dkt 34. Ex 6. The Court granted that motion the next day. SDNY Dkt 38. Ex 7.

16.    On August 29, 2025, Plaintiffs filed an Emergency Motion for Contempt Against defendant MDM (SDNY Dkt 43) (Ex 9) and against Arroyo and the other non-parties (SDNY Dkt 42) (Ex 8) for allegedly violating the TRO. The Court granted those motions the same day, and found defendant and each of the non-parties in contempt (the "Contempt Order"). SDNY Dkt 44 and 45. Exs 10, 11. The Court also imposed a fine of "$200,000 per day to be paid daily to the Clerk of the Court" until the prohibited activities cease—holding defendant, non-party Arroyo and the other non-parties "jointly and severally liable for this fine." *Id.*

17.    On September 5, 2025, following a hearing at which only Plaintiffs attended, the Court granted a preliminary injunction against defendant that tracked the language of the TRO, enjoining: "[Defendant], its agents, employees, attorneys, and any person in active concert or participation with it, from doing [any of the specified acts] during the pendency of this litigation

…" SDNY Dkt 49. Ex 12.

18.    On September 8, 2025, Plaintiffs requested that the Court: (i) "shift the Court's contempt sanction from being payable to the Clerk of Court to being payable [direct] to Plaintiffs"; and (ii) grant a freezing order over "the contemnors' assets in the United States." SDNY Dkt 66. Ex 13. Plaintiff argued that: if the Court makes the sanction payable to Plaintiffs, then Plaintiffs can request a writ of execution from the Court after a material amount of fines have accrued … Plaintiffs can then register that writ of execution in the relevant jurisdictions where contemnors' assets are located … Once registered, Plaintiffs can request the local federal court to enforce the writ of execution on contemnors *Id.* The next day, September 9, 2025, the Court granted Plaintiffs' motion, granting Plaintiffs the right to collect the contempt sanctions directly. SDNY Dkt 73. Ex 14.

19.    The SDNY court, in its Memorandum Order—based on the understanding at that time that e-mail service was sufficient, held: "Because Grupo Lauman is [defendant's] corporate parent and Arroyo is one of [defendant's] corporate officers, notice to [defendant] may be imputed, as a matter of law, to Grupo Lauman and Arroyo." *Id.*

20.    In that same Order, the Court also enjoined defendant and non-parties Grupo Lauman and Arroyo "from transferring, conveying, or otherwise dissipating any assets … in the United States …"; and enjoined non-party "Arroyo from conveying any title or interest in any real or personal property held in his name, or in the name of any entity over which he exercises control, located in the United States …" *Id.*

21.    There is no dispute that purported "service" on the defendant and on all non-parties has only been attempted by e-mail. See Plaintiffs' Certificates of Service SDNY Dkt 168 ¶ 34. Ex

18.

22.    On October 8, 2025, upon motion by Plaintiffs, the SDNY entered a final judgment against Arroyo for $5,800,000 payable to Plaintiffs based upon the alleged violation of the contempt order. SDNY Dkt 102 & 107. Exs 15, 16.

23.    To date, neither MDM nor Arroyo has made any appearance, of any kind, in the SDNY Case. None of the parties, defendant or non-party, has been served via the Hague.

### D.    SUMMARY OF ARGUMENT

24.    The SDNY Case is disturbing in its heavy-handed approach to MDM, the Mexican defendant-party, and the related Mexican non-parties, which include Arroyo. As a result, the SDNY court has entered a final judgment of nearly six million dollars against Arroyo, with no personal service.

25.    The facts concerning service and personal jurisdiction in the SDNY Case are not in dispute. The lone defendant in the SDNY Case, MDM, and Mexican citizen Arroyo have not been properly served via the Hague. The SDNY's orders are not a substitute for service under the Hague. The Hague does not permit email service.

26.    Accordingly, the SDNY did not and does not have personal jurisdiction over MDM or Arroyo.

27.    There are two distinct legal impediments to the validity of the Judgment based upon personal jurisdiction deficiencies. The first is that the SDNY has not obtained personal jurisdiction over Arroyo, a Mexican citizen, via the Hague to enforce a final judgment. The second is that the SDNY does not have personal jurisdiction over the lone defendant MDM, via the Hague, which denies the court the legal authority to enter a contempt order against a party or non-party.

28.     To issue a contempt order or judgment against a non-party to a lawsuit requires personal jurisdiction over that party. With respect to Arroyo, a Mexican citizen, personal jurisdiction requires service under the Hague. Rule 4(f)(1). At the time the SDNY court entered the contempt order, neither MDM nor Arroyo had been served. In other words, when the contempt order was entered, the SDNY did not have personal jurisdiction over MDM or Arroyo, which is a requirement before holding a party in contempt. *See Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 n.2 (N.D. Ill. 2008); see also *United States v. Thompson*, 921 F.3d 82, 87-88 (2d Cir. 2019) "Contempt proceedings may move forward upon a showing of actual notice, but only so long as the court making the contempt finding already *has personal jurisdiction* over the" party to be held in contempt. *Id.* (Emphasis supplied).

29.     The SDNY does not have jurisdiction over MDM or Arroyo. "The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Jonas v. Estate of Leven,* 116 F. Supp. 3d 314, 323-24 (S.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)). First, "the plaintiffs service of process upon the defendant must have been procedurally proper." There is no dispute that neither MDM nor Arroyo has been served via the Hague. The second and third personal jurisdiction requirements are not yet in play because the threshold for procedurally proper service has not been met.

30.     The lack of jurisdiction over MDM is fatal to the SDNY's authority to enter contempt orders against MDM and the non-parties. Under Second Circuit precedent, without personal jurisdiction over a party, a court may not hold that party in contempt.  Only once personal jurisdiction has been established over a defendant can the issue of contempt by non-parties arise.

Even then, the court must have personal jurisdiction over the non-parties before they can be held in contempt.

31.    Likewise, the SDNY's lack of jurisdiction over Arroyo is fatal to its authority to enter injunctions, contempt orders, and a final judgment.  Under Second Circuit precedent, a court may not hold a non-party in contempt without personal jurisdiction over that party.  Personal jurisdiction must be established over a non-party to enforce a contempt order. The SDNY is a long way from holding Arroyo in contempt.

## E.    ARGUMENT

32.    Rule 60(b)(4):

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(4) the judgment is void.

### i.    This Court may Determine Jurisdiction

"A party may contest _personal jurisdiction_ or method of service by refusing to appear, suffering a default judgment, then collaterally attacking that default judgment when the plaintiff initiates enforcement proceedings. Thus, the Louisiana Court properly considered whether the Texas Court had jurisdiction over the Defendants." *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 399 (5th Cir. 2001) (Emphasis in Original)

33. In *Harper Macleod Solicitors*, the Fifth Circuit was presented with a registration of judgment case, under 28 USC § 1963, that dealt with the Eastern District of Louisiana Court's opinion, using Rule 60(b)(4), that a judgment entered by the Southern District of Texas should be voided because of deficient service of process.

After concluding that district courts have authority to entertain motions challenging the validity of another district court's judgment using Rule 60(b)(4), we confirm the

propriety of the district court's reliance on federal rules of issue preclusion to determine that the Texas district court's jurisdictional findings did not preclude the Defendants from arguing their jurisdictional claims.

*Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d at 389.

34.     The Fifth Circuit noted in its opinion that: "Defendants are 'always free to ignore . . . judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding.' *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S. Ct. 2099, 2106, 72 L. Ed. 2d 492 (1982); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc*, 811 F.2d 278, 281 (5th Cir. 1987)." *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d at 393.

35.     The Fifth Circuit's opinion acknowledged that a challenge by the registering district court of the rendering court's judgment based upon personal jurisdiction is the majority opinion[2]:

> The majority of circuits, however, has held or suggested that registering courts may rely on Rule 60(b)(4) to void a default judgment if the rendering court was without jurisdiction over the defendant. *See F.D.I.C. v. Aaronian*,  93 F.3d 636, 639 (9th Cir. 1996); *Morris v. Peterson,* 759 F.2d 809, 811 (10th Cir. 1985); *Indian Head Nat. Bank of Nashua v. Brunelle,* 689 F.2d 245, 249 (1st Cir. 1982); *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 (2d Cir. 1980). Even the Seventh Circuit in *Elite Erectors*, though not granting registering courts authority over judgments through Rule 60(b), held that a registering court "was free to disregard the judgment . . . if the rendering court lacked jurisdiction." *Elite Erectors, Inc*., 212 F.3d at 1034.
>
> We join the majority of circuits and hold that registering courts may use Rule 60(b)(4) to sustain jurisdictional challenges to default judgments issued by another district court. Though judicial efficiency and comity among district courts often counsel a registering court to defer ruling on Rule 60(b) motions in favor of the rendering court, *see Fuhrman*, 611 F.2d at 205, such deference is less appropriate when the challenged judgment was issued without the benefit of argument from one party and the basis for the 60(b) challenge is jurisdictional. *See Covington Indus.*, 629 F.2d at 733. Requiring deference to a rendering court for determination

---

[2] The Second Circuit, where the Judgment originated, is in the majority too.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO VOID JUDGMENT UNDER RULE 60(b)(4)**
**PAGE 9**

of jurisdictional issues related to a default judgment is also difficult to reconcile with the established rule that a party may suffer a default judgment then collaterally attack that judgment upon enforcement.

*Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d at 394-95.

36.    The Judgment at issue is not entitled a *default judgment*, but that is what it is:

Rule 55

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

The facts are not disputed. Fox sought affirmative relief against Arroyo in the form of the contempt motion and final judgment against him.  Arroyo has not filed any pleadings in the SDNY Case, and he has not appeared in any capacity in the SDNY Case. The SDNY docket sheet does not show a summons issued for Arroyo, nor does it show that Arroyo has appeared in that case. Ex. 19. Fox and the SDNY proceeded without a defense by Arroyo.

## ii.    The NY Case "has a Very Serious Problem"

37.    The SDNY court recently experienced a chaotic episode because of the recent Second Circuit decision *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, LX 508797 (2d Cir. 2025). The central question in *Smart Study* was whether service by e-mail on two China-based defendants is allowed under the Hague, and therefore, whether e-mail service on those defendants is permissible under Rule 4(f). *Smart Study*, 164 F.4th at ___; 2025 LX 508797 at *11.

38.    The Second Circuit found that email service "is prohibited by the Hague Service Convention," and thus it is "improper under Rule 4(f)(3)." *Id.* at ___, LX 508797 at *17 (emphasis added); *see also id.* at *14 (citing *Maggie Gardner, Parochial Procedure*, 69 Stan. L. Rev. 941,

10000 (2017) ("any method of service not approved by the [Hague Service] Convention is effectively prohibited under Rule 4(f)(3)") (emphasis added)).

39.    The Second Circuit further found, *inter alia*, that:

"compliance with the [Hague] is mandatory" (*id.* at *17 (quotation omitted));

where the [Hague] applies, Rule 4(f)(2)(A) does not apply—because the [Hague] is an "internationally agreed means" of service (*id.* at *17-18); and

*unless and until service on a foreign person or entity is effected by a method authorized by the [Hague], courts lack personal jurisdiction over that person or entity* (*id.* at *18). (Emphasis supplied).

40.    On December 23, 2025, at a hearing in the SDNY Case, Judge Rakoff, the presiding judge, exclaimed that the *Smart Study* case may mean that his Court "lack[s] jurisdiction altogether from the get-go, which would be a very serious problem obviously for everyone concerned." SDNY Dkt 168, p. 1. Ex 18. To address the new *Smart Study* case, Judge Rakoff ordered Fox and MSD to file briefs.

41.    On February 17, 2026, Judge Rakoff made his decision. *See Fox Corp. v. Media Deportes Mex., S. de R.L. de C.V.,* 2026 U.S. Dist. LEXIS 32173 *; 2026 LX 77159; __ F.Supp.3d __; 2026 WL 438878.   Despite a contempt order and a $5,800,000 final judgment being issued, with only a purported email notice to Arroyo in Mexico, Judge Rakoff missed an opportunity to consider the service issues related to the defendant and Arroyo related to contempt and final judgments.

### iii.    There Is No Personal Jurisdiction Without Proper Service

42.    "[F]ederal courts are courts of limited jurisdiction." *Chase Manhattan Bank (Nat'l Asso.) v. South Acres Dev. Co.,* 434 U.S. 236, 239-40 (1978). "Before a federal court may exercise

personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem,* 451 F.3d 89, 94 (2d Cir. 2006) (quotation omitted); see also *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) ("The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements. First, the plaintiff's service of process upon the defendant must have been procedurally proper …").

43.     "A court must first determine that it has personal jurisdiction over defendants before proceeding to the merits of a case." *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.,* 694 F. Supp. 3d 374, 384 (S.D.N.Y. 2023).

44.     A "judgment entered against a party not subject to the personal jurisdiction of the court due to defective service must be set aside as a matter of law" (*DeCurtis v. Upward Bound Int'l Inc.*, 2012 U.S. Dist. LEXIS 143295 *11; 2012 WL 4561127 (quotation omitted)) because it "is void" *CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 479 (S.D.N.Y. 2021).

45.     The same is true for interlocutory orders for relief: A "district court is powerless to proceed on a motion for preliminary injunction in the absence of personal jurisdiction." *Cleanspark, Inc., Discovery Growth Fund, LLC*, 485 F. Supp. 3d 494, 500 (S.D.N.Y. 2020).

46.     Where it is "not clearly established that the court ha[s] jurisdiction over" a party, an "injunction [i]s improperly entered," because a "court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *1963 v. Stein*, 897 F.2d 653, 658-59 (2d Cir. 1990) (quotations omitted); see also *Antsy Labs LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Complaint,* 2021 U.S. Dist. LEXIS 241185 *4; 2021 WL 5967613 (S.D.N.Y. 2021) ("due process

requires that before the Court issues injunctive relief against a defendant, the Court must have personal jurisdiction over that defendant").

47.    "If this Court lacked personal jurisdiction over these defendants, then the injunction would be void as to them." *SEC v. Capital Growth Co., S.A. (Costa Rica),* 391 F. Supp. 593, 600 (S.D.N.Y. 1974).

### iv.    Hague Article 15 Does Not Apply to Contempt or Final Judgments

48.    According to Judge Rakoff:

the issue now before the Court is whether *Smart Study* entirely invalidates the Court's exercise of jurisdiction thus far in this case, or whether there is any other basis for the exercise of such jurisdiction. After careful consideration of the Second Circuit's opinion in *Smart Study* and the parties' thoughtful arguments about it, the Court concludes that *Smart Study's* holdings do not invalidate the Court's exercise of jurisdiction to either (1) grant plaintiffs' motions for temporary injunctive relief; or (2) hold MDM, MSD, and their co-contemnors in civil contempt and impose appropriate sanctions on them.

*Fox Corp. v. Media Deportes Mex., S. de R.L. de C.V.,* 2026 U.S. Dist. LEXIS 32173 at *15-6.

The framing of the issue is interesting because it does not address the exercise of jurisdiction for the entry of the final judgment against Arroyo. In fact, Judge Rakoff avoids addressing whether his court has jurisdiction over Arroyo, or MDM, to enter a final order. His opinion acknowledges that he cannot award final relief based upon email, but he overlooks that and grants final relief  to Fox against Arroyo on that very basis.

49.    Judge Rakoff's opinion in *Fox Corp. v. Media Deportes Mex., S. de R.L. de C.V* is based on his decision that the Hague's Article 15(3), wherein special terms of service are proper "in case of urgency, any provisional or protective measures," and that Fox's injunctive motions and *contempt* satisfied the Hague's meaning of "provisional and protective." *Fox Corp. v. Media*

*Deportes Mex., S. de R.L. de C.V.,* 2026 U.S. Dist. LEXIS 32173 at *20.

50.    This motion does not challenge Judge Rakoff's opinion that notice of temporary restraining orders and preliminary injunctions are "provisional and protective," but contempt, and certainly final orders, are not "provisional and protective."

51.    In *Overnight Blowout LLC v. Shenzhen Kairuijia E-Commerce Co., Ltd.,* No. 25 Civ. In 6086, 2025 U.S. Dist. LEXIS 161029 (S.D.N.Y. July 31, 2025), an intellectual property case, the plaintiff sought to serve the defendant by email under Article 15's "provisional and protective" exception. The SDNY denied the  request, finding:

> The Court is unpersuaded that Article 15's urgency exception permits the relief Plaintiffs seek [email service of process of the lawsuit]. At bottom, alternative service by email under Rule 4(f)(3) is not a "provisional or protective measure." Service is "more than notice to the defendant." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987). It is a formal "procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts [personal] jurisdiction  over the person of the party served." *Id.* (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 90 L. Ed. 185 (1946)). Service thus authorizes outcomes that are decidedly final.
>
> *     *     *
>
> [T]he Supreme Court has said [the Hague] is designed principally to "specif[y] certain approved methods of service and 'pre-empt[] inconsistent methods of service.'" *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273, 137 S. Ct. 1504, 197 L. Ed. 2d 826 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988)). Permitting whatever form of service a court deems appropriate whenever there is an "urgency" fundamentally subverts the [Hague] and its overarching purpose of specifying certain approved methods of service and preempting others.
>
> Article 15 is instead better read to authorize relief such as temporary restraining orders or preliminary injunctions, which are quintessential "provisional or protective measures." Unlike alternative service, these measures are designed precisely for the purpose of providing interim relief. See *13 Moore's Federal Practice* § 65.20 (3d ed. 2025) ("The purpose of the preliminary injunction is to

preserve the status quo between the parties pending a final determination of the merits of the action."). Additionally, under Federal Rule of Civil Procedure 65(a), preliminary injunctions require only "notice"—as opposed to formal Rule 4 "service"—to the party against whom relief is sought. Fed. R. Civ. P. 65(a). "[D]etermination of the adequacy of [Rule 65(a)] notice falls within the exercise of the district court's sound discretion." See *13 Moore's Federal Practice* § 65.21[2] (3d ed. 2025). Thus, although a plaintiff cannot obtain final relief until complying with the Convention's proscribed methods of service, see Hague Convention, art. 15, it may still be able to restrain defendants.

*Overnight Blowout LLC v. Shenzhen Kairuijia E-Commerce Co.*, 2025 U.S. Dist. LEXIS 160029, *6-8 (July 31, 2025, SDNY).

52.    Accordingly, for the SDNY court to enter a final judgment against Arroyo, it had to comply with the Hague service requirements. Alternative Hague methods based upon the "provisional and protective" exception are only for interim relief.

53.    Likewise, the SDNY did not cite a single case that held contempt to fall under the Hague's "provisional and protective" exception. As the *Overnight Blowout* court stated: "under Federal Rule of Civil Procedure 65(a), preliminary injunctions require only 'notice.'" Service of a contempt motion is Rule 4.1(b), but that is only appropriate after Rule 4 service. This issue is discussed further below.

54.    The notice of the TRO and preliminary injunction may be subject to the Hague alternative methods under the "provisional and protective" exception for interim relief.  But it is not sufficient to provide personal jurisdiction for the enforcement of a contempt order or the entry of a final judgment. "Service thus authorizes outcomes that are decidedly final."

### v.    Final Judgment

55.    Judge Rakoff's opinion should have found the entry of the Arroyo judgment a mistake. Judge Rakoff explains in conclusory fashion that the final judgment against Arroyo is "in

no way analogous to the default judgment sought by *Smart Study.*" *Id.* at *18. But it is analogous, the *Smart Study* default judgments and the final judgment against Arroyo both cross the line from interim relief to final relief.  Judge Rakoff's own logic and reasoning that Hague service is required to render a final judgment should have initiated a *sua sponte* order dismissing the Arroyo judgment.

56.      Again, Judge Rakoff abandoned his reasoning when it came to analyzing the final judgment against Arroyo. For Example, Judge Rakoff stated: "plaintiffs have requested, and the Court has taken, no step in this case that is remotely similar to the motion for entry of default judgment that was at issue in *Smart Study*. Rather, the Court has exercised jurisdiction only by entering temporary injunctive relief and by sanctioning contumacious conduct." *Fox Corp. v. Media Deportes Mex., S. de R.L. de C.V.,* 2026 U.S. Dist. LEXIS 32173 at *17-18. However, the SDNY court went beyond interim relief and awarded Fox a final judgment against Arroyo. Judge Rakoff's protestations that the *Smart Study* judgments are not "remotely similar" to the Arroyo judgment is simply wrong.

57.      Judge Rakoff's opinion supports the judgments in *Smart Study*, but he does not apply that same reasoning to the final judgment against Arroyo. The record in the SDNY Case leaves little doubt as to the character of the Judgment:

> Plaintiffs' Memorandum of Law in Support of Motion for Judgment Against Manuel Arroyo: "An order imposing monetary sanctions against a non-party is a final order from which the Court may enter judgment. See Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules include a decree and any order from which an appeal lies."); *OSRecovery, Inc. v. One Groupe Intl, Inc.,* 462 F.3d 87, 89–90 (2d Cir. 2006) ("Although appeals from civil contempt orders issued against parties are not 'final' and thus not immediately appealable, such appeals by non-parties are 'final.'"); *Petroleos Mexicanos v. Crawford Enters., Inc.,* 826 F.2d 392, 398 (5th Cir. 1987) ("an adjudication of civil contempt is final and appealable as to a non-party"); *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 919 (8th Cir. 1998) ("orders of civil contempt against nonparties are final and appealable")."

(SDNY DKT 103)(Ex 16); and

The title of the Judgment is "Final Judgment Against Manuel Arroyo." "This is a final judgment with respect to the civil sanctions set forth above." Signed by Judge Rakoff. Final Judgment Against Manuel Arroyo. SDNY DKT 107. Ex 16.

58.    The SDNY court concluded the *Smart Study* case does not invalidate:

the Court's exercise of jurisdiction to either (1) grant plaintiffs' motions for temporary injunctive relief; or (2) hold MDM, MSD, and their co-contemnors in civil contempt and impose appropriate sanctions on them.

The Court reaches these conclusions principally because *Smart Study* concerns a district court's jurisdiction to enter final judgment where service has not properly been effectuated under the Hague Convention.

 *Fox Corp.,* 2026 U.S. Dist. LEXIS 32173 at *16.

The case against Arroyo concerns a district court's jurisdiction to enter a final judgment where service has not been properly effectuated under the Hague. To take Judge Rakoff at his word, his legal analysis does not address the issue of personal jurisdiction over Arroyo or the law's justification for the entry of final judgment against him. Yet, Judge Rakoff did not void the Judgment despite noting the law that would require such an action.

59.    Judge Rakoff's opinion cites additional case law that supports his opinion that a final judgment requires proper service under the Hague:

Likewise, Judge Liman took the same approach in *Overnight Blowout LLC v. Shenzhen Kairuijia E-Commerce Co., Ltd.,* No. 25 Civ. 6086, 2025 U.S. Dist. LEXIS 161079, 2025 WL 2381588, at *1-3 (S.D.N.Y. July 31, 2025), in which he held that "although a plaintiff cannot obtain final relief" over a defendant residing in a country that has objected to postal service until such time as the plaintiff "compl[ies] with the Convention's pr[e]scribed methods of service,"

*Id.* at *23.

[I]n *ABC v. DEF*, No. 24 Civ. 8341, 2024 U.S. Dist. LEXIS 229046, 2024 WL

5168624, at *2 (S.D.N.Y. Dec. 13, 2024), Judge Cote held that the Hague Convention's "restriction on entry of a final judgment" unless service is effectuated in the Convention's usual manner.

*Fox Corp.,* 2026 U.S. Dist. LEXIS 32173 at *22.

What is clear is that before a final judgment against a Mexican citizen can be entered, the court must have proper service under the Hague procedures.

60.    Judge Rakoff does not reconcile his dismissiveness that final judgments against foreign parties, who are in signatory countries to the Hague, require different degrees of service of process; that is, one can have a judgment rendered on "email service," while the other requires the Hague procedures.

### vi.    The SDNY Has Not Served the NY Case's Lone Defendant

61.    In the SDNY Case, MDM, the sole defendant in that case, has not been served through the Hague process. If the New York court never had jurisdiction over the sole defendant, then all "derivative" orders, including the contempt order and judgment against Arroyo, should be vacated.  *Comverse, Inc. v. Am. Telecommc'ns., Inc. Chile S.A., 2009 U.S. Dist. LEXIS 14381, 2009 WL 464446, *2 n.4 (S.D.N.Y. Feb. 24, 2009) (citing New York State NOW v. Terry, 961 F.2d 390, 400 (2d Cir. 1992)). S*ee also e.g. *Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.*, 2025 U.S. Dist. LEXIS 216454 *4 (S.D.N.Y. Nov. 5, 2025). Specifically:

> "Without personal jurisdiction over a party, a court may not hold that party in contempt." *Cardell*, 2012 U.S. Dist. LEXIS 188295 at *32; 2012 WL 12932049; see also e.g. *Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.*, 2025 U.S. Dist. LEXIS 216454 *4 (S.D.N.Y. Nov. 5, 2025) ("a court must have personal jurisdiction over a party before holding that party in contempt").  Only once personal jurisdiction has been established over a defendant can the issue of contempt by non-parties arise. Even then, the court must have "personal jurisdiction" over non-parties before they can be held in contempt. *Comverse, Inc. v. Am. Telecomms., Inc. Chile*, 2009 U.S. Dist. LEXIS 14381 *8 n.4; 2009 WL

464446 (S.D.N.Y. 2009).

* * *

A district court cannot exercise personal jurisdiction over a nonparty to a litigation, on the basis that the nonparty is acting "in active concert or participation", within the meaning of Fed. R. Civ. P. 65(d), with a party who is subject to an injunction, unless personal jurisdiction is established over the nonparty. *Heyman v. Kline*, 444 F.2d 65 (2d Cir. 1971); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2960, at 589 (1973).

*Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd*., 869 F.2d 34, 40 (2d Cir. 1989).

**This alone requires the Judgment to be vacated.** The SDNY did not obtain proper personal service over the defendant and the non-parties via email. At best, it was notice to those parties that a preliminary injunction hearing was to be held, but nothing more. "[U]nder Federal Rule of Civil Procedure 65(a), preliminary injunctions require only 'notice'—as opposed to formal Rule 4 'service'—to the party against whom relief is sought. Fed. R. Civ. P. 65(a)." *Overnight Blowout LLC,* 2025 U.S. Dist. LEXIS 160029, *8.

### vii.    This Court has the Final Say

62.    This Court will have the final say on whether the SDNY had personal jurisdiction over Arroyo to enter a contempt order and a final judgment. "[A]s noted in *Elite Erectors*, 'whether or not the district court enters an order under the Rule 60(b)(4), principles of issue preclusion would prevent re-litigation of the jurisdictional question in other courts of registration.' *Elite Erectors, Inc*., 212 F.3d at 1034." *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d at 395.

63.    On this issue, the Fifth Circuit continued:

Principles of issue preclusion apply with equal force in courts of rendition and registration: neither should re-adjudicate issues first heard and ruled on by another federal court. Therefore, even under the rule of *Elite Erectors*, a court of registration

effectively can tell a rendering court not to enforce a default judgment when the defaulting defendant never appeared in the court of rendition and had a valid jurisdictional complaint. That one district court may exercise such authority over another is a necessary consequence of the established rule that a defendant may challenge a rendering court's personal jurisdiction in a court in which enforcement of a default judgment is attempted. Such authority also reflects the federal system's disdain for default judgments.

*Id.*

64.     In *Harper Macleod Solicitors,* the Fifth Circuit ruled that if a foreign judgment debtor raises the issue of the rendering court's lack of personal jurisdiction in the court of registration, that court has the inherent power to inquire into the jurisdiction of the rendering court, and the court of registration is not bound by the findings of the rendering court. The Court stated its position:

> We decline to extend full faith and credit principles to cases like this one involving the enforcement of a federal judgment by another federal court. We begin our analysis by reiterating the power of a court of registration to inquire into the jurisdiction of the rendering court before enforcing the rendering court's judgment. *See 22 Indus.,* 629 F.2d at 732 ("When, in an enforcement proceeding, the validity of the judgment is questioned on this ground [of lack of personal jurisdiction], the enforcing court has the inherent power to void the judgment[.]" (citing *Baldwin*, 283 U.S. 522 at 525)). Moreover, federal case law has long allowed parties to federal lawsuits to rely on this power by granting defendants the ability "to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland, Ltd*., 456 U.S. at 706; *Broadcast Music, Inc.,* 811 F.2d at 281.

*Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d at 397.

65.     This Court will decide whether the SDNY had proper service over MDM or Arroyo.

### F.     CONCLUSION

66.     The SDNY court must have jurisdiction over a party, or non-party, before enforcing a contempt order or a final judgment. The SDNY does not have personal jurisdiction over Arroyo

or MDM because there has been no proper service on either of them via the Hague in Mexico. Therefore, the SDNY contempt order and judgment are void *ab initio*.

67.     While the SDNY court's opinion in *Fox Corp. v. Media Deportes Mex., S. de R.L. de C.V.* does not void the Judgement against Arroyo, it should have under the cases cited and the SDNY court's own opinion. Not one cited case supports the position that a final judgment can be rendered against a party who was not been properly served. In fact, the cases held the opposite. Here, it is indisputable that Arroyo and MDM only purportedly received emails, which is not proper service under the Hague.

68.     The SDNY fall back position is that email service under the Hague is proper for "provisional and protective" temporary orders, such as temporary restraining orders and preliminary injunctions. But the issue is that the SDNY went on to impose contempt sanctions and a final judgment, which requires the court's personal jurisdiction over Arroyo and MDM. Personal jurisdiction based solely on emails purportedly sent to Mexican citizens is prohibited.

69.     Interestingly, the cases cited by Judge Rakoff in his opinion support the foregoing. That is, the "provisional and protective" exception under the Hague allows alternative methods of notice for temporary orders, but not for a final judgment. As set forth in *Smart Study*, email service "is prohibited by the Hague Service Convention."[3]

---

[3] A broader reading of *Smart Study* could include that even email for "provisional and protective" temporary orders is no longer permitted under the Hague. Whether that interpretation is right or not is not necessary for making a determination in this case.

70.     Judge Rakoff defends his final judgment against Arroyo because it is somehow different from the *Smart Study* judgment, but he does not tell us how. The only possible exception is that Judge Rakoff thinks entering temporary orders with email notice is the equivalent of personal service, but he has already disavowed that with the cases he cited that explicitly state the "provisional and protective" exception does not apply to final judgments.  Likewise, Rule 65 only provides for notice of requested injunctive relief, not service and not personal jurisdiction.

71.     The SDNY does not have personal jurisdiction over Arroyo or MDM because neither has been served per the terms of service under the Hague. The SDNY cannot enter contempt orders against MDM or Arroyo because it lacks personal jurisdiction. The SDNY cannot enter a final judgment against Arroyo for that same reason. Personal jurisdiction begins with proper service of process.

WHEREFORE, Defendant Manuel Arroyo requests that the Court grant this Motion, order that the SDNY judgment registered in this cause is void *ab initio* because of the Southern District of New York Court's failure to have personal jurisdiction over Manuel Arroyo and/or over Media Deportes Mexico, S. de R.L. de C.V., declare that the registration of the SDNY judgment is void and of no consequence or effect, and award Manuel Arroyo such other and further relief to which he may be entitled, including attorneys fees and costs.

Dated: March 9, 2026.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO VOID JUDGMENT UNDER RULE 60(b)(4)**

Respectfully submitted,

By: /s/Steven R. Shaver
Steven R. Shaver
Texas Bar No. 18136550
sshaver@rrspllc.com
Marcos G. Ronquillo
Texas Bar No. 17226000
mgronquillo@fjrpllc.com
Riney Ronquillo Soule PLLC
5420 LBJ Freeway, Suite 220
Dallas, Texas 75240
(214) 461-1206 (Telephone)
(214) 461-1210 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that on March 9, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

By: /s/Steven R. Shaver
Steven R. Shaver

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO VOID JUDGMENT UNDER RULE 60(b)(4)**
**PAGE 23**