IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| FOX CORPORATION, FOX MEDIA, LLC, AND FOX SPORTS EN ESPAÑOL, LLC, <br><br> *Plaintiffs* <br><br> v. <br><br> MANUEL ARROYO, <br><br> *Defendant* | Civil Action No. 4:25-mc-02271 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

1.     On March 27, 2026, the Court entered a "limited discovery" order, Dkt 13, (the "Order"). The Order's scope of discovery allowed Fox to inquire into  (a) the nature of the relationship between Manuel Arroyo ("Arroyo") and Mexico Sports Distribution, LLC ("MSD") and (b) the facts and circumstances of Arroyo's receipt of e-mail service and notice of the SDNY proceedings.

2.     Fox's Supplement focuses on the nature of the relationship between Arroyo and MSD. Fox's new argument incorrectly claims that six documents (Fox's exhibits) obtained from the SDNY court appointed MSD Receiver (the "SDNY Receiver") (who sent this Court a self-serving letter with misrepresentations) show Arroyo was administering and managing MSD after he resigned as president.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

3.　　On information and belief, Fox obtained over **17,000 emails** (most of them consisting of several pages) of documents from the SDNY Receiver, some of which are not even documents that belong to MSD, but they belong to several other parties to a "Coordination Agreement." Therefore, there are numerous documents that were improperly delivered to the SDNY Receiver, and that the SDNY Receiver improperly turned over to Fox. That not only means that those documents are privileged, but also that awareness of the context in which they were produced is essential to understanding their true meaning. In any case, it is worth noting that out of more than 17,000 emails that were improperly obtained from the SDNY Receiver, Fox cherry-picked six exhibits and took them out of context to arguably show Arroyo remained in control of MSD despite Arroyo having resigned from management in January 2025.

4.　　On information and belief, the SDNY Receiver obtained over 17,000 emails (most of them consisting of several pages) from MSD's counsel in California, which the receiver referred to as "collected MSD documents from third parties." **The SDNY Receiver's letter and Fox's Supplement do not advise the Court that they already have over 17,000 emails** that were obtained from MSD's counsel in California, and are subject to strict confidentiality obligations set forth in a certain "Coordination Agreement" between the several parties involved, including Arroyo**. Those records that were only made available to MSD's California counsel pursuant to the aforementioned Coordination Agreement were, apparently and unfortunately, indiscriminately and improperly reproduced in whole to the SDNY Receiver, who then improperly provided the documents to Fox.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

5.      The six exhibits do not support Fox's allegation that Arroyo was managing MSD after his resignation, or that Arroyo's interests have been represented by MSD.

6.      Exhibit A shows Arroyo paid MSD's attorney fees. That does not mean that Arroyo was managing MSD, or that his interests were represented by MSD. It merely means that Arroyo provided financial support to an entity in which he has a financial interest. Precisely because of Fox's cherry picking, the context in which Arroyo paid MSD's attorney fees was deliberately left out.

7.      It is common for shareholders of an entity to make loans to said entity, especially when it is facing financial hardship. Making a loan does not make someone a manager of the entity to which the money was loaned. Nor does it mean that said entity will represent the interests of its creditor. In this particular case, it is important to note that MSD's financial hardships (which are publicly known) have been directly caused by Fox and its affiliates, including but not limited to by pursuing frivolous litigation against MSD in several jurisdictions, including the SDNY. In other words, Exhibit A only shows that, given the financial hardship faced by MSD as a direct consequence of the actions of Fox and its affiliates, Arroyo had to step in and make a loan to MSD in order to try to preserve its viability as a business. This only shows financial support; nothing more.

8.      Exhibit B is closely related to Exhibit A. Exhibit B shows Arroyo (using an email domain that **does not** belong to MSD, but to an independent entity) making arrangements for certain payments purportedly owed to Formula 1 by MSD to be made with funds that, according to the email, had just been secured. Just as in the case of paying MSD's attorney fees, this is

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

another instance of Arroyo providing financial support to an entity (MSD) in which he has an indirect financial stake. Nothing in the email suggests that Arroyo was managing MSD at the time. It only shows that he stepped in to provide assurances that MSD would fulfill its contractual obligations  despite MSD's publicly known financial hardships (directly attributable to Fox and its affiliates).

9.      Arroyo's intervention to provide financial assistance was necessary to provide Formula 1 with the necessary assurances. In fact, Fox deliberately fails to mention that the email filed as Exhibit B is a response to a previous email sent by Formula 1 to several individuals (many of whom are not officers, directors or managers of MSD) including Arroyo. This shows that Arroyo stepped in not as an officer or manager of MSD, but as an addressee of the communication sent by Formula 1, and as a financial backer of MSD, whose assurance was required by Formula 1.

10.     Likewise, Exhibit C includes an email purportedly sent by Arroyo using an email domain that is not owned or related to MSD. As explained above and in previous filings before this Court, Arroyo has an indirect financial stake in MSD; therefore, he periodically requested financial information from MSD.

11.     Exhibit C only shows Arroyo purportedly requesting financial information from Gabriel López, who, on information and belief, was MSD's CFO at the time of the email.  Once again, this is not a sign of control, but only a sign of an interested party requesting the financial information of an entity in which he has an indirect financial interest. This does not mean that Arroyo manages the day-to-day operations of MSD, nor that his interests are represented by MSD.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

12.     Exhibit D is a commercial proposal to Formula 1 that an MSD officer (not Arroyo) sent to the rights holder.  The only way in which this email relates to Arroyo is that he was copied in the email, as well as five other individuals.  The proposal was not sent by Arroyo; it was not prepared by Arroyo. The email asked nothing of Arroyo. Arroyo's only participation in the  Exhibit D email is passive: he is merely copied in the email. Again, this only shows that Arroyo was copied on an email sent by an MSD officer; it does not show that Arroyo managed MSD, or that his interests were represented by MSD.

13.     Despite Fox's claim, the exhibit does not show that Arroyo was involved in the negotiations with Formula 1; it shows, only that he was on at least one occasion advised of what was going on, but receiving information is not the same as having an active role in negotiations, as Fox wishes were the case.

14.     While Fox hyperventilates over Fox Sports Mexico as some secret stash of documents that show Arroyo was manipulating the attorneys representing MSD in the SDNY, Exhibit D's attachment states at the bottom, and on each page, "Mexico Sports Distribution, LLC." In other words, Exhibit D is an MSD document; Arroyo is not playing word games.

15.     Exhibit E, a letter agreement, does not name Arroyo and is not executed by Arroyo. Here, Fox sidesteps the real issue and merely wants to smear Arroyo by claiming MSD's rights to contractual payments were assigned to MDM to defeat the SDNY orders. The agreement shows that **before** Fox's SDNY lawsuit was filed, MSD had assigned its rights under the agreement to Media Deportes Mexico, S. de R.L. de C.V. ("MDM").

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

16.     Exhibit E is entitled "Second Amendment to Affiliation Letter of Agreement." The original agreement was between MSD and Total Play Telecommunications, S.A. de C.V. dated February 3, 2021. That is recited in the Agreement's first paragraph.

17.     In the Agreement's second recital, it states on August 1, 2025, MSD assigned its rights and obligations to MDM.  This was two weeks **before** Fox filed its lawsuit in the SDNY, and a **month before** MSD was dragged into that lawsuit as a non-party. It was also months after Arroyo had been removed from any position in MSD by its member.

18.     Arroyo's alleged "scheme" to avoid Fox and its contempt orders must have been hatched and enacted **before** Fox even sued MDM or brought MSD in as a non-party. Fox's favorite argument is the alleged clairvoyance of Arroyo.

19.     Also, Fox is asking the Court to believe that Arroyo assigned an asset to MDM, who is the only named party in the SDNY suit, to protect MSD, a non-party in the SDNY case. That makes no sense.

20.     Exhibit F shows the desperate nature of Fox's argument. F is a 53 page email chain created over four months. Not one email is from Arroyo. Only the last email was directed to Arroyo, and Arroyo did not respond.

### Berg Declarations Update

21.     As initially mentioned in Arroyo's Response to Fox's Motion to Compel,  Fox Counsel C. Berg has filed numerous declarations in the SDNY case (SDNY Dkt 109, 114, 132) that were not made "under penalty of perjury," a requirement for a declaration. 28 U.S.C. § 1746;

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

*In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487-88 (2d Cir. 2013). Specifically, these deficient declarations were made eight months ago and relied upon by Judge Rakoff in important and relevant decisions to this case: SDNY Dkt 109, in support of Fox's **contempt motion**, SDNY Dkt 114, in support of **enforcing judgment** against Arroyo, and SDNY Dkt 132, in **support of contempt**. In fact, if the SDNY had not entered the contempt order and judgment, which the Berg declarations supported, this case would not exist.

22.     Since Arroyo raised this issue in this Court on May 4th, Berg scurried to amend the three deficient declarations (SDNY Dkt 230-232). He filed them on May 6, 2026. But neither Berg nor Fox put the SDNY on notice that three substantive declarations that formed the evidentiary basis for the entry of contempt orders and a judgment against Arroyo were legally invalid at the time the SDNY entered its orders.

23.     Attorneys owe an ethical duty of candor in all of their dealings with the Court. *See, e.g., Mason Agency Ltd. v. Eastwind Hellas SA, No*. 09-CV-06474 (DLC), 2009 U.S. Dist. LEXIS 91305, 2009 WL 3169567, at *2 (S.D.N.Y. Sept. 29, 2009) ("The rules of professional responsibility . . . impose upon attorneys a duty of candor in all representations they make before a tribunal."). Courts have found "an ethical duty of candor in all of their dealings with the Court." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) ("In order for the Court to conduct proceedings properly, it must be able to rely upon representations made on the record by attorneys licensed to practice before it."). This duty of candor includes an obligation to correct material misstatements made to the court. *See Google LLC v. Starovikov*, No. 21-CV-10260, 2022 U.S. Dist. LEXIS 207437, 2022 WL 16948296, at *13

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

(S.D.N.Y. Nov. 15, 2022). *Tirelli v. William K. Harrington As United States Tr. (In re Reyes)*, 2023 U.S. Dist. LEXIS 210174 *14 SDNY 2023.

24.    Berg has not discharged his duty to the SDNY, sneaking in revised declarations does not correct misstatements made to the court.  The correction comes when the SDNY is advised that at the time it entered its contempt orders and judgment against Arroyo, the SDNY relied upon false declarations.

**Conclusion**

25.    Fox's supplemental six exhibits do not show Arroyo was managing, controlling, or administering MSD. They also do not show that Arroyo's interests have been in any way represented by MSD. If anything, the exhibits affirmatively show Arroyo was not acting as an officer of MSD and was not exhibiting any elements of control.

26.    The Court should deny Fox's Motion to Compel and its Supplement. Fox has abused the Court's Order by seeking discovery well outside the boundaries of what is necessary to establish Arroyo's relationship to MSD and service of the SDNY papers on Arroyo. Arroyo has provided the Notification of Removal showing Arroyo is no longer the president of MSD. He also provided the same information in answer to interrogatories.  Arroyo has fully complied with the Court's Order on the limited discovery.

Dated: June 2, 2026.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

Respectfully submitted,

By: /s/Steven R. Shaver
Steven R. Shaver
Texas Bar No. 18136550
sshaver@rrspllc.com
Marcos G. Ronquillo
Texas Bar No. 17226000
mgronquillo@fjrpllc.com
Riney Ronquillo Soule PLLC
5420 LBJ Freeway, Suite 220
Dallas, Texas 75240
(214) 461-1206 (Telephone)
(214) 461-1210 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that on June 2, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

By: /s/Steven R. Shaver
Steven R. Shaver

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**