**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **FOX CORPORATION, FOX MEDIA LLC, and FOX SPORTS EN ESPAÑOL, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CASE NO. 4:25-MC-02271** |
| | § | |
| **MANUEL ARAROYO,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT, MANUEL ARROYO'S, BRIEF IN SUPPORT OF OPPOSED MOTION TO RECONSIDER THE COURT'S MARCH 27, 2026 ORDER STAYING PLAINTIFFS' DEADLINE TO RESPOND TO DEFENDANT'S MOTION TO VOID [ECF No. 13] AND, ALTERNATIVELY, OPPOSED MOTION TO RECONSIDER THE COURT'S AUGUST 3, 2026, CORRECTED ORDER GRANTING PLAINTIFFS' EXPEDITED MOTION TO COMPEL [EFC No. 48]**

## TABLE OF CONTENTS

## BRIEF IN SUPPORT

**I. BACKGROUND** .......... 6

**II. LEGAL STANDARD** .......... 7

**III. ARGUMENT** .......... 8

A. Defendant's Pending Motion to Void the Judgment Presents a Purely Legal Question That No Amount of Discovery Can Affect; Therefore, the Court Should Not Have Ordered Jurisdictional Discovery .......... 8

1. The burden of establishing jurisdiction over Arroyo is Fox's, and it does not shift to Arroyo for contesting it. .......... 9
2. The voidness question is purely legal as to service: email service on a defendant in Mexico is void, and no discovery can cure it. .......... 10
3. Fox has satisfied none of these prerequisites for jurisdictional discovery .......... 10
4. The voidness question is independently a legal issue as to the nonparty-preclusion theory: Fox's "adequate representation" theory also fails on its face. .......... 11
5. Because the motion to void is antecedent, purely legal, and case-dispositive, jurisdictional discovery is both unavailable and moot, and the motion should be decided first. .......... 14

B. In the Alternative, Even If Some Jurisdictional Discovery Were Permissible, the Order Should Be Reconsidered Because the Discovery Fox Served on Arroyo Far Exceeds Its Proper Scope, the Spoliation Order Lacks a Predicate, Arroyo Lacks Control and Waived Nothing. .......... 15

1. The ordered jurisdictional discovery sweeps far beyond the narrow jurisdictional facts Fox's theory places in issue. .......... 15
2. The ordered spoliation discovery rests on no threshold showing that a duty to preserve attached or that any evidence was lost. .......... 16
3. Arroyo lacks possession, custody, or control of much of what is sought. .......... 18
4. Arroyo did not waive his objections; the three-day delay is excusable neglect. .......... 19
5. Reconsideration is necessary to prevent manifest injustice. .......... 21

**IV. CONCLUSION AND PRAYER** .......... 21

## TABLE OF AUTHORITIES

**CASES**

*Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017) ........................................................ __

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142 (9th Cir. 2005) ..........20965

*Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791 (S.D. Tex. 2013)........................7

*In re Citric Acid Litigation*, 191 F.3d 1090 (9th Cir. 1999) ..........................................................18

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 258 F.R.D. 149 (S.D. Tex. 2009)............20

*In re United States*, 864 F.2d 1153 (5th Cir. 1989) .......................................................................19

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962)...................................................................................19

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006) ............................................8, 9

*Melancon v. Texaco, Inc.*, 659 F.2d 551 (5th Cir. Unit A Oct. 1981) ............................................7

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014) ..........................................10, 14

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).....................19, 20

*Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563 (5th Cir. 2003)..............................................8

*SH Tobacco & Cigars, LLC v. Masters 96th LLC*, No. 3:23-CV-0781-D, 2024 U.S. Dist. LEXIS 112393 (N.D. Tex. June 26, 2024)..........................................................................................19

*Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) .....................................................................................................................18

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025).............11

*Solorzano v. Shell Chem. Co.*, No. 00-31191, 2001 WL 564145 (5th Cir. May 18, 2001)...........19

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...............................................................9, 11, 12, 14, 15

*Templet v. 1965Chem Inc.*, 367 F.3d 473 (5th Cir. 2004) ........................................................... __

*United States v. Bestfoods*, 524 U.S. 51 (1998) ......................................................................12, 18

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) .........................................10

*Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017) .......................................................................10

*WesternGeco LLC v. ION Geophysical Corp.*, No. H-09-1827, 2010 WL 2266524 (S.D. Tex. June 2, 2010)...................................................................................................................18,020

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) ............................................19

*Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982).......................................................8, 9, 10, 14, 15

**TREATIES**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (Hague Service Convention) .......... __

**RULES**

Fed. R. Civ. P. 4(f)(3) .......... 10, 11, 14

Fed. R. Civ. P. 6(b)(1)(B) .......... 19

Fed. R. Civ. P. 26(b)(1) .......... 17

Fed. R. Civ. P. 26(b)(5)(A) .......... 20

Fed. R. Civ. P. 33(b)(4) .......... 19

Fed. R. Civ. P. 34(a)(1) .......... 17

Fed. R. Civ. P. 37(e) .......... 16, 17

Fed. R. Civ. P. 54(b) .......... 5, 7, 21

Fed. R. Civ. P. 60(b)(4) .......... 5, 6, 7, 8, 9, 11, 14, 21, 22

Fed. R. Civ. P. 69(a)(2) .......... __

**COMES NOW** Defendant, Manuel Arroyo ("Arroyo") and respectfully moves under Rule 54(b), Fed.R.Civ.P., for reconsideration of the Court's Order of March 27, 2026 [ECF No. 13], staying Plaintiffs', Fox Corporation, Fox Media LLC, and Fox Sports En Español, LLC (collectively herein, "Fox"), deadline to respond to Arroyo's Motion to Void pending completion of jurisdictional discovery. Fox is not entitled to jurisdictional discovery. A determination on Arroyo's Motion to Void Judgment Under Rule 60(b)(4) [ECF No. 2-3], which challenges this Court's authority to enforce the underlying judgment, and the rendering court's jurisdiction over him will render a determination of any jurisdictional discovery herein moot.

Alternatively, Arroyo requests that the Court reconsider its August 3, 2026, Corrected Order Granting Plaintiffs' Expedited Motion to Compel [ECF No. 48], compelling Arroyo to answer all of Fox's jurisdictional and spoliation discovery, on the basis that Fox's plethora of sweeping discovery requests far exceed the scope, number, and propriety of the ordered discovery. This alternative reconsideration request is made without waiver of Arroyo's pending Motion to Void Judgment [ECF No. 2-3] or of any jurisdictional defense.

Reconsideration is warranted for two independent sets of reasons. First, and principally, the ordered jurisdictional discovery should never have been ordered at all: Arroyo's Rule 60(b)(4) motion presents a purely legal question—whether the rendering court ("SDNY") had jurisdiction over Arroyo—which the present record answers, and no discovery can change that answer. Second, and in the alternative, assuming for the sake of argument some jurisdictional discovery were permissible, Arroyo does not control much of what is sought, Arroyo waived no objection through a good-faith, three-day delay in responding to discovery, and the August 3, 2026, Corrected Order Granting Plaintiffs' Expedited Motion to Compel [ECF No. 48], ordered spoliation discovery that rests on no threshold predicate. As above stated, the instant motion is

made without waiver of Defendant's pending Rule 60(b)(4) motion or of any jurisdictional defense.

## BRIEF IN SUPPORT

### I. BACKGROUND

This miscellaneous action is an enforcement- and discovery-related extension of a trademark dispute litigated in the United States District Court for the Southern District of New York ("Rendering Court" or "SDNY"), which levied contempt sanctions in the millions against Arroyo, who is a nonparty to the New York action. It is undisputed that Arroyo never appeared in that case and that Fox only served notice to him, a nonparty and citizen of Mexico, by email. Arroyo contends he was never served pursuant to The Hague Convention, which expressly prohibits service upon a Mexican citizen via email. Accordingly, Arroyo has moved under Rule 60(b)(4) to void the judgment as to him and to contest jurisdiction.

Fox's asserted bases for reaching Arroyo are narrow. Fox contends (a) that its attempted email service upon Arroyo was proper, and (b) that Arroyo was president of Mexico Sports Distribution, LLC ("MSD"), another nonparty in the New York action, when that action was filed on August 14, 2025, such that Arroyo's interests were adequately represented in the contempt matter by MSD. Arroyo disputes both predicates in his Rule 60(b)(4) motion pending before this Court. For present purposes, what matters is that Fox's theory places in issue a small, finite set of jurisdictional facts: the validity of service, Arroyo's corporate role at MSD and tenure during the relevant period, and the adequacy of MSD's representation (as another nonparty in the SDNY matter), if any, of Arroyo's interests in the New York action.

Despite all of the above, Fox nonetheless served sweeping interrogatories and requests for production, and obtained the Order compelling Arroyo to answer all of them, together with

spoliation discovery. Through counsel, Arroyo served responses and objections three days after the deadline, owing to a good-faith error in calculating the due date; no privilege log was served. Arroyo now seeks reconsideration.

The premises of Fox's theory are genuinely disputed, as Arroyo's pending Rule 60(b)(4) motion sets out in full. Arroyo was never validly served, Fox relies on unilateral email service into Mexico that does not satisfy the Hague Service Convention or applicable law; Arroyo did not hold the office of president at the time the SDNY action was filed; and his interests were not adequately represented by MSD in the SDNY proceeding, in which he never appeared. Arroyo does not ask the Court to resolve those merits here—they are the subject of the Rule 60(b)(4) motion—but raises them to show that the jurisdictional inquiry turns on a finite, identifiable set of facts, against which the propriety and breadth of the ordered discovery can be measured.

## II. LEGAL STANDARD

Because both Orders are interlocutory, reconsideration is governed by Rule 54(b), not Rules 59(e) or 60(b). *Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013). Under Rule 54(b), the Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981), *citing United States v. Jerry*, 487 F.2d600, 604-05 (3d Cir. 1973); *United States v. Bryson*, 16 F.R.D. 431, 435 (N.D. Cal. 1954), *aff'd.*, 238 F.2d 657 (9th Cir. 1956), 243 F.2d 837 (9th Cir. 1957), *cert. denied*, 355 U.S. 817,78 S. Ct. 20, 2 L. Ed. 2d 34 (1957); *see also* decisions cited at 60 C.J.S. *Motions & Orders*, §62(1) (1969) and at 56 Am.Jur.2d *Motions & Orders*, § 42 (1971). In exercising that discretion, courts in this District look to the considerations that inform Rule 59(e): whether there has been an intervening change in controlling law, whether new evidence has become available, or whether reconsideration is necessary to

correct a manifest error of law or fact or to prevent manifest injustice. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). While jurisdictional discovery lies within the Court's discretion, it is limited: it must be tethered to the disputed jurisdictional inquiry and may not be used as a fishing expedition or as an extension of merits discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982); *see* Fed. R. Civ. P. 26(b)(1).

'"When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted. *See* 4 Moore's Federal Practice 26.69 at 26-504; Note, *Discovery of Jurisdictional Facts*, 59 Va. L. Rev. 533, 546 (1973). Accordingly, this Court affirms denials of discovery on questions of personal jurisdiction in cases where the discovery sought 'could not have added any significant facts'. *Washington v. Norton Manufacturing, Inc.*, 5 Cir. 1979, 588 F.2d 441, 447, *cert. denied*, 442 U.S. 942, 99 S. Ct.2886, 61 L. Ed. 2d 313." *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

Significantly, "[w]here personal jurisdiction is challenged, the party seeking to invoke the court's power bears the burden of establishing that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006)*, *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).

## III. ARGUMENT

### A. Defendant's Pending Motion to Void the Judgment Presents a Purely Legal Question That No Amount of Discovery Can Affect; Therefore, The Court Should Not Have Ordered Jurisdictional Discovery.

The Court ordered jurisdictional discovery to develop facts bearing on whether the SDNY had jurisdiction over Arroyo. But that question is presented by Arroyo's pending Rule 60(b)(4) motion, and it is a question of law that the present record already answers. Because the motion can

and must be decided as a matter of law, jurisdictional discovery cannot change its outcome, and ordering such discovery—while staying the dispositive motion that resolves the very question the discovery seeks to reach—was error. Nothing herein waives, or asks the Court to decide the merits of the Rule 60(b)(4) motion; the legal character of that motion is addressed only to show that the ordered discovery can serve no purpose.

**1. The burden of establishing jurisdiction over Arroyo is Fox's, and it does not shift to Arroyo for contesting it.**

The party invoking a federal court's jurisdiction bears the burden of establishing that jurisdiction exists, and that burden may not be shifted to the party challenging it. *Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006)*, *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). Where a party seeks to bind and enforce a judgment against a nonparty to the underlying action, the burden of establishing that the nonparty is bound rests on the party asserting preclusion; nonparty preclusion is a narrow exception that the proponent must plead and prove. *Taylor v. Sturgell*, 553 U.S. 880, 884–85, 907 (2008). Fox thus bears the burden on Arroyo's Rule 60(b)(4) motion, both to establish that the SDNY validly acquired jurisdiction over Arroyo and to establish that Arroyo—a nonparty—is bound by that court's contempt citation and subsequent judgment in the amount of Five Million Eight Hundred Thousand Dollars ($5,800,000.00), against Arroyo. In March, Fox took a second judgment against him, under the same contempt order, in the unbelievable amount of Sixty-Six Million Dollars ($66,000,000).

Here, on the instant motion to reconsider, Fox is entitled to jurisdictional discovery only after making a preliminary showing of the requisite jurisdictional facts; discovery is not a substitute for that threshold showing, and is properly denied where Fox cannot produce facts sufficient to establish jurisdiction. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th

Cir. 2005); *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982); *Monkton Ins. Servs., Ltd. v. Ritter,* 768 F.3d 429 (5th Cir. 2014). Thus, to reiterate, Fox bears that threshold burden, and Fox seeks discovery precisely because it cannot meet it on the present record. Fox's request for jurisdictional discovery to develop those very showings is a concession that it cannot carry its own burden on the existing record. A party may not use jurisdictional discovery to manufacture a threshold showing it is required to make before subjecting a contesting nonparty (here, Arroyo was a nonparty to the SDNY contempt matter) to the court's process.

**2. The voidness question is purely legal as to service: email service on a defendant in Mexico is void, and no discovery can cure it.**

Compliance with the Hague Service Convention is mandatory in every case to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Convention clearly applied here: Fox asserts that Arroyo, a resident of Mexico, was subjected to the SDNY's jurisdiction via email, at a "location" in Mexico—and Fox's own [mis]representations that it was proceeding under the Hague Convention concede that the Convention governs. Mexico has objected to Article 10 of the Convention. In an objecting state, the alternative channels of Article 10 are unavailable, and a plaintiff must affect service through the receiving state's Central Authority under Article 5. Service by mail is permissible under Article 10(a) only where the receiving state has not objected and the method is authorized by otherwise-applicable law (*Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017))—conditions that cannot be met for service into Mexico.

**3. Fox has satisfied none of these prerequisites for jurisdictional discovery.**

Fox never effected, or even attempted, service through Mexico's Central Authority; never obtained an order authorizing alternative service under Federal Rule of Civil Procedure 4(f)(3); and instead

attempted to serve Arroyo by unilateral email. **That service is void as a matter of law.** Controlling authority in the Rendering Court's own circuit forecloses it, to-wit: the Second Circuit has held that the Hague Service Convention does not permit email service on a defendant located in a State that has objected to Article 10, and that such service is therefore *improper* under Rule 4(f)—even where the district court has authorized email service under Rule 4(f)(3). *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025). Here there was not even a Rule 4(f)(3) order; Fox proceeded unilaterally. If court-authorized email service into an objecting State is improper, unilateral email service into an objecting State—with no order and no attempt at Convention-compliant service—is void *a fortiori*. Since the Rendering Court never acquired personal jurisdiction over Arroyo, the SDNY contempt order and judgment is void as to him under Rule 60(b)(4). **This conclusion follows from the undisputed record—Fox admits that service was by email, into Mexico, without Central Authority process or a Rule 4(f)(3) order—and significantly and dispositive of the instant motion to reconsider, no quantum of jurisdictional discovery can supply valid service that was never made.**

**4. The voidness question is independently a legal issue as to the nonparty-preclusion theory: Fox's "adequate representation" theory also fails on its face.**

Fox's alternative basis for binding Arroyo—that his interests were "adequately represented" in the SDNY action by MSD, a corporation that was itself a nonparty, fails as a matter of law—even taking Fox's assertions as true. It is a bedrock rule that a nonparty is not bound by a judgment in an action to which he was not a party, and the "adequate representation" exception is narrow and strictly limited. *Taylor v. Sturgell*, 553 U.S. at 884–85, 894–95, 900. That exception does not reach the case at bar for at least three independent reasons. First, adequate representation runs from a party that understood itself to be acting in a representative capacity or whose interests

the rendering court took care to protect; a nonparty corporation (here, MSD) cannot be the vehicle that binds a nonparty individual. *Id.* at 900.

Second, a corporation and its officers are legally distinct, and representation of a corporation's interests is not representation of an officer's personal interests. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

Third, *Taylor* requires an alignment of interests that is absent here: Arroyo's interests and MSD's are not aligned. Arroyo is a citizen of Mexico and MSD is a Delaware limited liability company; there is no jurisdictional alignment of interest. Because the theory fails as a matter of law on Fox's own—albeit inaccurate—version of the facts, no discovery into Arroyo's relationship with MSD could change the result.

Independently, and in the alternative **Fox's factual predicate is refuted by the undisputed, authenticated documentary record (*see* Exhibit 1**, attached hereto**) — underscoring that the requested discovery is a search for support Fox lacks rather than a means of resolving a genuine dispute.** Fox's misplaced assertion that Arroyo was president of MSD "at the relevant time", to-wit: on August 14, 2025, when the SDNY action was filed, rests on a March 2021 list of corporate officers in the MSD Articles of Association (incorrectly referred to by Fox as MSD's "operating agreement). While Fox does its best to discredit the letter dated January 17, 2025 from the sole member of MDS revoking Arroyo's appointment as an officer, executed and notarized before Mexican Notary No. 143, Matías Romero, Oaxaca, with certified English translation by expert translator María Yolanda Rodríguez Ávila, such creative mud-slinging by Fox, in an attempt to manufacture fact issues and conduct a fishing expedition in the name of "jurisdictional discovery" when the documentary evidence is irrefutable, simply must fail. Fox's description—that "[t]here is an alarming number of reasons to question the credibility of

this document...discovery is necessary to determine the authenticity, veracity, and meaning..." (Fox's Reply to Motion to Stay (ECF No. 13) at *3) smells of desperation and deliberate mischaracterization of undisputed documentary evidence. Notably, the Court's discovery order does not allow a fishing expedition into the clear authenticity of this notarial instrument (**Exhibit 1**) and Fox did not propound discovery on it. Fox's suggestion that the public record shows Arroyo is president of MDM (*id.*) misrepresents the 2021 Articles of Association and misrepresents an affidavit by a corporate officer, on which Fox apparently relies, which merely confirms that the 2021 Articles of Association were, in fact, valid in 2021. Fox's misrepresentation that the corporate officer actually stated Arroyo was president of MSD at the time of the SDNY action, when he swore to nothing of the kind, shocks the conscience that an officer of the court would make such a brazen misrepresentation, nor should it be rewarded.

While Fox spends considerable pages trying to tear apart the one document that definitively proves Arroyo was <u>not</u> president of MSD at the time of the SDNY litigation on August 14, 2025, such tactics should not—and under the plethora of law cited herein, ***cannot***—be used to obtain jurisdictional discovery in a case where it is unnecessary and a pending dispositive motion will resolve this entire matter.

Notably, and much to Fox's consternation the March 2021 officer list in MSD's Articles of Association has, moreover, been formally rendered "without effects." *See* **Exhibit 1**, revoking appointment of Arroyo as MSD president, dated January 17, 2025—nearly eight months before the SDNY action was filed—issued by the sole member of MSD on the subject "Appointment Revoked", and executed before a well-respected and pedigreed Mexican notary public. The undisputed fact is that Arroyo's appointment was revoked as of January 17, 2025. He no longer

held the office of president "or any other" corporate office from that date forward and retained no "authority to legally bind" MSD. *See* **Exhibit 1**.

A March 2021 officer list appearing in the 2021 MSD Articles of Association, since rendered without effects, is not evidence of a 2025 office, and the sole member's notarized revocation of Arroyo's office and binding authority is the antithesis of the alignment of interests, representative capacity, and agency that nonparty preclusion requires. *See e.g.*, *Taylor v. Sturgell*, 553 U.S. at 900. The authenticated record thus affirmatively negates Fox's theory rather than leaving it open for discovery. **Fox's request to conduct jurisdictional discovery in search of a predicate that its own cited exhibits cannot supply is the paradigm of a fishing expedition.**

5. **Because the motion to void is antecedent, purely legal, and case-dispositive, jurisdictional discovery is both unavailable and moot, and the motion should be decided first.**

Jurisdictional discovery is not a matter of right; it is limited to the disputed jurisdictional inquiry and may not be used as a fishing expedition or an extension of merits discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). A court may deny jurisdictional discovery where the record shows the requested discovery is not likely to produce the facts needed to establish jurisdiction, and the party requesting it bears the burden of demonstrating its necessity. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).

Those principles are dispositive here. The dispositive facts—attempted service by unilateral email into Mexico, with no Central Authority process and no Rule 4(f)(3) order; and a nonparty-preclusion theory that fails on its face—are established or absent as a matter of record, and no "jurisdictional discovery" could change them. Rule 60(b)(4) admits no discretion: once a jurisdictional defect appears, the judgment must be treated as void. Ordering discovery to develop

jurisdictional facts, while staying the very motion those facts supposedly bear on, inverts the proper order of decision: the antecedent, case-dispositive legal question should be resolved first, and its resolution moots the discovery entirely.

**B. In the Alternative, Even If Some Jurisdictional Discovery Were Permissible, the Order Should Be Reconsidered Because the Discovery Fox served on Arroyo Far Exceeds Its Proper Scope, the Spoliation Order Lacks a Predicate, Arroyo Lacks Control and Waived Nothing.**

**1. The ordered jurisdictional discovery sweeps far beyond the narrow jurisdictional facts Fox's theory places in issue.**

Jurisdictional discovery is not an open license. It is limited to the jurisdictional question and may not serve as a fishing expedition or an extension of merits discovery; the trial court's discretion is bounded accordingly. *Wyatt*, 686 F.2d at 283. The permissible scope is fixed by what the jurisdictional dispute actually requires—here, by the elements of Fox's own theory. Fox seeks to bind a nonparty on the ground that he was president of another nonparty and thus adequately represented in the contempt matter. Binding a nonparty on an adequate-representation theory is a narrow, due-process-constrained exception to the rule that one is not bound by a judgment in an action to which he was not a party. *Taylor v. Sturgell*, 553 U.S. 880, 884–95 (2008). That theory places in issue only a discrete set of facts: Arroyo's corporate role and tenure during the relevant period, the adequacy of MSD's alleged representation of Arroyo's interests in the SDNY contempt matter, and the validity of attempted email service upon Arroyo.

The fact Fox contests the theory does not enlarge its scope. Whether Arroyo held the relevant office, whether MSD adequately represented him, and whether service was valid are answered by a narrow body of proof—corporate records reflecting Arroyo's office and its dates, materials bearing on MSD's conduct as a nonparty in the SDNY contempt matter, and the manner

and method of service. They are not answered by Arroyo's personal finances, non-MSD titles or positions, (should not be) attorney-client communications and work product, documents related to this case and another related SDTX case, Fox trademarks, MSD's assets, media coverage, post-judgement documents/communications, the operations of separate business entities, or the merits of the trademark dispute. A theory this specific cannot justify discovery this broad.

Measured against that scope, the ordered discovery vastly overreaches. Fox's requests demand, among other things, Arroyo's personal financial records and assets; the operations and records of separate entities through which Arroyo does business; documents concerning the merits

of the underlying trademark dispute; documents concerning the merits of this case and a related SDTX case; and communications and dealings bearing no connection to Arroyo's corporate office, the adequacy of representation, or service. None of that is necessary to determine whether Arroyo was president of MSD on August 14, 2025, when the trademark dispute in the SDNY was filed, whether MSD adequately represented him in that litigation, or whether he was served. It is instead general, merits- and asset-focused discovery repackaged as "jurisdictional"—precisely the fishing expedition and merits-extension that jurisdictional discovery may not become. The Court should, alternatively, reconsider the Order and narrow the discovery to requests genuinely bearing on the three jurisdictional facts identified above, striking the plethora of others that clearly exceed that scope.

**2. The ordered spoliation discovery rests on no threshold showing that a duty to preserve attached or that any evidence was lost.**

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve it, after a duty to preserve has attached. For electronically stored information, Rule 37(e) makes relief available only where the movant shows that the information "should have been preserved,"

that it "was lost because a party failed to take reasonable steps to preserve it," and that it "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The duty to preserve, and thus any predicate for spoliation discovery, attaches only in the anticipation or conduct of litigation and only as to information within the party's custody and control. **These are threshold requirements, not afterthoughts.**

Fox made no such threshold showing, and the Order compelled spoliation discovery without one. Fox identified no specific evidence that existed, was within Arroyo's custody and control, and was lost or destroyed; identified no point at which a duty to preserve attached to Arroyo; and did not show that any assertedly lost information cannot be obtained from other sources, including the receiver of MSD, or MSD itself. The Order and the hearing record provide no analysis or substantive explanation of any issues concerning spoliation or, for that matter, jurisdictional discovery and the reasons why Fox is entitled to same. The premise is especially infirm here, because whether any preservation duty ever attached to Arroyo is itself contested: Arroyo is a nonparty who never appeared in the SDNY action and contests that he was ever properly served or made subject to it. A duty to preserve cannot simply be assumed against a person whose status as a party is the very question in dispute, and here, it is undisputed that Arroyo was in fact a nonparty to the SDNY action. To the extent the spoliation discovery seeks intrusive forensic access to Arroyo's devices or accounts, or his business affairs, such relief is not routine; it requires a heightened showing of non-compliance or discrepancy and must be proportional to any genuine preservation concern. Fed. R. Civ. P. 26(b)(1). Forensic imaging is a drastic measure, not a matter of right: Rule 34(a) "is not meant to create a routine right of direct access to a party's electronic information system," and courts must "guard against undue intrusiveness." Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment; *see In re Ford Motor Co.*, 345 F.3d 1315,

1316–17 (11th Cir. 2003). Fox's pontification that metadata "showed" the backdating of documents is an unsupported allegation, unaccompanied by any evidence; a bare, unproven allegation of metadata manipulation is speculation, not the strong showing of discrepancy or non-production that forensic imaging requires. The spoliation discovery should be vacated or, at a minimum, narrowed to any category for which a proper predicate is established.

**3. Arroyo lacks possession, custody, or control of much of what is sought.**

Independently, much of the discovery seeks documents Arroyo does not control. "'Control is defined as the legal right to obtain documents upon demand.' *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (*quoting United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)). 'The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control.' *Int'l. Union of Petroleum & Indus. Workers*, 870 F.2d at 1452. '[P]roof of theoretical control is insufficient; a showing of actual control is required.' *In re Citric Acid Litig.*, 191 F.3d at 1107; *see also Int'l. Union of Petroleum & Indus. Workers*, 870 F.2d at 1453-54 [*11] ('Control must be firmly placed in reality, not in an esoteric concept such as 'inherent relationship.') (*internal citations omitted*)." *HTC Corp. v. Tech. Props. Ltd., 2011 U.S. Dist. LEXIS 4531 (2011)* (N.D. Cal. 2011).

As a former officer, Arroyo has no legal right to obtain MSD's records on demand and no practical ability to obtain them; they are held by the court-appointed receiver, in whom the right to those records now vests. Mere dealings with a separate entity do not confer control over that entity's documents. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107–08 (9th Cir. 1999). This Court has declined to find control even where separate entities coordinated and exchanged documents, *Shell Glob.*, 2011 WL 3418396, at *2–*6, and has held that mere access to another entity's documents is not sufficient, *WesternGeco*

*LLC v. ION Geophysical Corp.*, No. H-09-1827, 2010 WL 2266524, at *3 (S.D. Tex. June 2, 2010). And the Fifth Circuit has held that a document demand reaching materials to which a former insider merely "has access . . . by virtue of his prior position" is overbroad, limiting such a request to documents within the person's "custody, control, or possession." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004). Arroyo cannot be compelled to produce what he does not possess or control.

**4. Arroyo did not waive his objections; the three-day delay is excusable neglect.**

The three-day delay in serving responses does not forfeit Arroyo's objections. The Fifth Circuit's "general rule" that untimely objections are waived, *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989), yields to the Court's discretion; the Fifth Circuit has upheld permitting objections even after a party failed to respond at all within thirty days. *Solorzano v. Shell Chem. Co.*, No. 00-31191, 2001 WL 564145 (5th Cir. May 18, 2001).

Rule 33 excuses an untimely objection for "good cause," Fed. R. Civ. P. 33(b)(4), and Rule 6(b)(1)(B) permits acceptance of a late act resulting from "excusable neglect." The factors set out in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380—prejudice, length of delay, reason, and good faith, 507 U.S. 380, 395 (1993)—uniformly favor excusal: a three-day delay, no prejudice, no affected deadline, and counsel's good-faith miscalculation. That a client is bound by counsel's conduct, *Link v. Wabash R. Co.*, 370 U.S. 626 (1962), does not compel forfeiture; *Pioneer* itself excused counsel's neglect. Courts in this District reach the same result: reconsideration is warranted where a deadline was missed through counsel's inadvertent calendaring error and no prejudice results, because the preference is to decide the matter on the merits rather than on a technicality. *SH Tobacco & Cigars, LLC v. Masters 96th LLC*, No. 3:23-

CV-0781-D, 2024 U.S. Dist. LEXIS 112393, at *2, *4 (N.D. Tex. June 26, 2024). For the requests for production, waiver is especially inappropriate, because Rule 34 does not mandate waiver of untimely objections and reserves it for egregious conduct—not a brief, good-faith delay. *See*, *also*, *WesternGeco LLC v. ION Geophysical Corp.*, No. H-09-1827, 2010 WL 2266524 (S.D. Tex. June 22, 2010) (wherein the court analyzed the factors set out by the U.S. Supreme Court in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393-94, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)) to find that counsel's calendaring error was excusable neglect; counsel had calendared the deadline three days after the actual deadline to respond.

Nor is any privilege objection waived for want of a log. Waiver of privilege is not an automatic consequence of a late or absent log; courts in this District assess the question under a discretionary, multi-factor analysis weighing the length of and reason for the delay, whether the delay was dilatory or in bad faith, prejudice, whether the request was properly framed, and whether waiver would impose an excessively harsh result. *In re Enron Corp. Sav. Plan v. Hewitt Associates,* 258 F.R.D. 149, 156–57 (S.D. Tex. 2009).

This accords with the Ninth Circuit's rejection of a *per se* waiver rule in favor of a holistic reasonableness analysis. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147–49 (9th Cir. 2005). Because waiver is a harsh sanction, courts reserve it for unjustified delay and bad faith; "minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances" weigh against it. *In re Enron*, 258 F.R.D. at 157.

Here, the omission stemmed from counsel's good-faith error, not strategic withholding; Fox shows no prejudice; and Arroyo is prepared to serve a compliant privilege log under Rule 26(b)(5)(A) as to any materials remaining after jurisdictional discovery, if any is allowed, is properly narrowed.

**5. Reconsideration is necessary to prevent manifest injustice.**

Compelling a nonparty who contests jurisdiction to answer sweeping merits- and asset-focused discovery labeled "jurisdictional," and forensic spoliation discovery resting on no threshold predicate—while forfeiting his objections for a three-day, good-faith delay—works a manifest injustice that Rule 54(b) empowers the Court to correct.

## IV. CONCLUSION AND PRAYER

For these reasons, Arroyo respectfully requests that the Court reconsider the Court's Order of March 27, 2026 [ECF No. 13], staying Fox's deadline to respond to Arroyo's Motion to Void pending completion of jurisdictional discovery; alternatively, and grant the following relief:

Primarily, that the Court DECLINE to compel any jurisdictional discovery and VACATE the Order as to it, because the pending Rule 60(b)(4) motion presents a purely legal question that discovery cannot affect, and that the Court decide that antecedent, case-dispositive motion first.

In the alternative, if the Court determines that some jurisdictional discovery is permissible, that the Court reconsider its August 3, 2026, Corrected Order Granting Plaintiffs' Expedited Motion to Compel [ECF No. 48], compelling Arroyo to answer all of Fox's jurisdictional and spoliation discovery, on the basis that Fox's plethora of sweeping discovery requests far exceed the scope, number, and propriety of the ordered discovery and:

(1) NARROW the jurisdictional discovery to requests genuinely bearing on the validity of service, Arroyo's corporate role and tenure, and the adequacy of MSD's alleged representation, striking those that exceed that scope; (2) VACATE the ordered spoliation discovery for want of a threshold predicate, or narrow it to any category for which a proper predicate is shown; (3) find

that Arroyo has not waived his objections; and (4) limit any production to documents within Arroyo's possession, custody, or control.

Arroyo further requests such other relief as is just. This motion is made without waiver of Arroyo's pending Motion to Void Judgment Under Rule 60(b)(4) or of any jurisdictional defense.

Dated: August 17, 2026

Respectfully submitted,

By: /s/Steven R. Shaver
Steven R. Shaver
Texas Bar No. 18136550
sshaver@rrspllc.com
Marcos G. Ronquillo
Texas Bar No. 17226000
mgronquillo@fjrpllc.com
Riney Ronquillo Soule PLLC
5420 LBJ Freeway, Suite 220
Dallas, Texas 75240
(214) 461-1206 (Telephone)
(214) 461-1210 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that on August 17, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

By: /s/Steven R. Shaver
Steven R. Shaver

**CERTIFICATE OF CONFERENCE**

Counsel for Defendant conferred with counsel for Plaintiffs on August 14, 2026, regarding the relief requested. The parties discussed this Motion by email and in a telephone conference. The parties were unable to agree on any issues. Plaintiffs are opposed.

By: /s/Steven R. Shaver
Steven R. Shaver