**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **FOX CORPORATION,** | § | |
| **FOX MEDIA LLC, and** | § | |
| **FOX SPORTS EN ESPAÑOL LLC,** | § | |
| ***Plaintiffs*** | § | |
| | § | **CAUSE NO. 4:25-MC-02271** |
| **v.** | § | |
| | § | |
| **MANUEL ARROYO,** | § | |
| ***Defendant.*** | § | |
| | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 1

II. NATURE AND STAGE OF THE PROCEEDING............................................ 2

III. LEGAL STANDARD .............................................................................. 4

IV. ARGUMENT ......................................................................................... 5

A. Arroyo's motion for reconsideration is untimely ................................. 6

B. Arroyo fails to identify any reason for this Court to exercise its discretion to change its past orders.............................................................. 6

1. Arroyo's personal jurisdiction question is not "purely legal," nor is the only relevant fact whether Arroyo was MSD's president. ................. 7

2. Plaintiffs made an adequate preliminary jurisdictional showing. 11

3. Plaintiffs made a preliminary showing of spoliation. ....................... 14

4. The Court properly found waiver of Arroyo's objections well beyond his three-day delay. ................................................................... 18

5. No other consideration, such as that of equity, fairness, or prejudice, warrants reconsideration ......................................................... 20

V. CONCLUSION ....................................................................................... 21

## TABLE OF AUTHORITY

Cases

*Alex A. by & through Smith v. Edwards*, No. CV 22-573-SDD-RLB, 2024 WL 1122430, at *4 (M.D. La. Mar. 14, 2024) ........ 5, 7

*Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) ........ 4

*Cassidy v. State Farm Lloyds*, No. 4:22-CV-03890, 2025 WL 4231026, at *1 (S.D. Tex. June 10, 2025) ........ 5

*Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 341 (M.D. La. 2006) 18

*DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*, No. 4:11-CV-1355, 2017 WL 3484507, at *2 (S.D. Tex. Aug. 14, 2017) ........ 6, 7

*De Hoyos v. Prime, Inc.*, 2015 WL 12803713, at *2 (S.D. Tex. Mar. 18, 2015) . 20

*Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, 801 F. Supp. 3d 217, 226 (S.D.N.Y. 2025) ........ 9

*In re Arroyo*, No. 26-20495 (5th Cir. Sept. 4, 2026) ........ 4, 7

*ING Bank N.V. v. M/V Portland, IMO No. 9497854*, 2016 WL 3365426, at *6 (M.D. La. June 16, 2016) ........ 12

*Midwest Emps. Cas. Co. v. Williams*, 161 F.3d 877, 880 (5th Cir. 1998) ........ 21

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 2008 WL 2036816, at *5 (S.D. Tex. May 9, 2008) ........ 20

*Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) ........ 17, 18

*Shufeldt v. Baker Donelson, Bearman, Caldwell and Berkowitz*, P.C., 2020 WL 1532323, at *10 (M.D. Tenn. Mar. 31, 2020) ........ 16

***Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 169 (2d Cir. 2025) .......... 13, 14**

***StrucSure Home Warranty, LLC v. Sulzbach*, No. 4:20-CV-2915, 2021 WL 3516242, at *1 (S.D. Tex. Aug. 10, 2021) .......... 5**

***Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) .......... 11**

***Tracy v. NVR, Inc.*, 2012 WL 1067889, at *6 (W.D.N.Y. Mar. 26, 2012) .......... 17**

**Rules**

**Fed. R. Civ. P. 54(b) .......... 4, 5, 20**

**Fed. R. Civ. P. 37(e) .......... 14**

**Fed. R. Civ. P. 4 .......... 13**

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| **FOX CORPORATION,** | § | |
| **FOX MEDIA LLC, and** | § | |
| **FOX SPORTS EN ESPAÑOL LLC,** | § | |
| ***Plaintiffs*** | § | |
| | § | **CAUSE NO. 4:25-MC-02271** |
| **v.** | § | |
| | § | |
| **MANUEL ARROYO,** | § | |
| ***Defendant.*** | § | |
| | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Arroyo's belated motion for reconsideration is his last desperate play to salvage his Rule 60 motion and save himself from contempt. He lost a motion to compel before the Court, lost an emergency motion to stay before the Fifth Circuit, lost a request for mandamus before the Fifth Circuit, and now faces contempt in this action. Motions for reconsideration are disfavored and do not permit do-overs of arguments that failed the first time. Arroyo's motion for reconsideration is one such attempted do over. In his latest effort to avoid the Court's orders, Arroyo rehashes the same, rejected arguments and mischaracterizes Plaintiffs' positions to make strawman arguments that bear no resemblance to the arguments put forth in Plaintiffs' prior briefing. Arroyo's motion for reconsideration is easily refutable. It should be denied.

The Court has considered Arroyo's arguments before, as has the Southern District of New York in many instances. Neither reiteration nor minor tweaks of the arguments save them. The Fifth Circuit has denied Arroyo's request for stay and mandamus request on these issues. So should this Court, for the detailed reasons that follow.

## II. NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed this action to register a judgment against Arroyo from the SDNY. ECF No. 1. Arroyo filed a Rule 60 motion to void the SDNY judgment on the grounds that the SDNY lacked personal jurisdiction over him to enter that judgment in the first place. ECF No. 3. Plaintiffs moved for limited jurisdictional discovery and a stay of its response deadline until jurisdictional discovery was complete. ECF No. 5. The Court granted Plaintiffs' motion on March 27, 2026, ordering Arroyo to respond to Plaintiffs' written discovery within fourteen days after receipt. ECF No. 13.

Plaintiffs propounded written discovery to Arroyo on April 3, 2026. Arroyo responded on April 20, 2026, three days after the court-ordered deadline. His unverified responses were entirely deficient, providing only boilerplate and baseless objections. He produced no substantive responses or documents, other than emails from Plaintiffs' counsel to Arroyo. The parties met and conferred on April 20 and 22, 2026. Arroyo's counsel refused to remedy the deficiencies, including by insisting that he had accurately calculated the response deadline.

On April 28, 2026, Plaintiffs moved to compel adequate responses. ECF No. 14. The Court then took supplemental briefing after Plaintiffs alerted the Court to newly-discovered evidence showing that Arroyo did in fact have responsive documents that he did not produce. Because Arroyo had already claimed he produced all responsive documents, ECF No. 17, at 22, and Plaintiffs' supplemental briefing showed he obviously did not, ECF No. 28, Plaintiffs requested leave to serve spoliation discovery based on that preliminary showing of spoliation.

The Court held a hearing on July 17, 2026, and granted Plaintiffs' motion to compel:

> I'm going to grant the motion in full; and plaintiffs have filed their supplemental briefing or requests for additional discovery to explore potential spoliation and other violations of Arroyo's discovery obligations. I'm going to grant that too.

ECF No. 55-1, at 3. On July 30, the Court issued a written order. ECF No. 47. On August 3, the Court issued a corrected order that Arroyo must:

> provide a full and complete supplemental production of documents in his possession, custody, or control in response to Plaintiffs' Request for Production of Documents dated April 3, 2026 no later than fourteen (14) days from the date of this Order [and] to provide full, complete, and accurate supplemental answers to Plaintiffs' interrogatories no later than fourteen (14) days from the date of this Order.

ECF No. 48. Arroyo waited 13 days and, the day before his production and responses were due, on Sunday, August 16, 2026, filed a motion to stay this Court's discovery orders. ECF No. 51. The next day, he moved for reconsideration of this Court's March 27, 2026 order granting limited jurisdictional discovery or, in the alternative, to reconsider this Court's August 3, 2026 order. ECF Nos. 52, 53.

The Court did not act on Arroyo's request for a stay. On August 17, 2026, Arroyo violated the Court's August 3 order by not producing any court-ordered documents or responses relating to jurisdictional discovery. Arroyo provided only boilerplate objections to Plaintiffs' spoliation discovery requests, citing Arroyo's pending motions to stay and for reconsideration. *See* ECF No. 55. Plaintiffs have since responded to Arroyo's motion to stay the Court's discovery orders, ECF No. 54, and filed a motion to hold Arroyo in contempt for failing to comply with this Court's orders. ECF No. 55. Arroyo also sought relief on these issues at the Fifth Circuit. He lost that Fifth Circuit emergency request for mandamus. *In re Arroyo*, No. 26-20495 (5th Cir. Sept. 4, 2026) (per curiam) (unpublished).

## III. LEGAL STANDARD

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision ... [that] does not end the action.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). And while "[u]nder Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law," *id.* (internal citations omitted), "[m]otions to reconsider are not a do-over." *Cassidy v. State Farm Lloyds*, No. 4:22-CV-03890, 2025 WL 4231026, at *1 (S.D. Tex. June 10, 2025). Even under the "less exacting" standard of Rule 54(b) compared to Rule 59(e), "Rule 54(b) motions are disfavored." *StrucSure Home*

*Warranty, LLC v. Sulzbach*, No. 4:20-CV-2915, 2021 WL 3516242, at *1 (S.D. Tex. Aug. 10, 2021).

"While Rule 54(b) affords broad discretion to the court to reconsider and reverse interlocutory orders, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Alex A. by & through Smith v. Edwards*, No. CV 22-573-SDD-RLB, 2024 WL 1122430, at *4 (M.D. La. Mar. 14, 2024) (internal citations omitted). "Motions for reconsiderations are extraordinary remedies and should be used sparingly in the interest of finality and conversation [sic] of judicial resources." *Id.* A motion for reconsideration does not give a party "the right to continuously revisit the same issues." *DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*, No. 4:11-CV-1355, 2017 WL 3484507, at *2 (S.D. Tex. Aug. 14, 2017). And "while [Rule 54] discretion exists, the Court does not believe that it negates the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time." *Id.* "Using an overly generous standard in reviewing motions under Rule 54(b) would reduce judicial efficiency and give parties no incentive to raise all relevant arguments at first consideration of an issue[.]" *Id.*

## IV. ARGUMENT

Arroyo's belated motion for reconsideration, five months after the Court's March 27, 2026 order, merely regurgitates the same arguments already rejected by this Court and presents no new facts, authority, argument, or other reason for this

Court to grant his motion for reconsideration. Regardless of the fact that Plaintiffs have already responded numerous times to the same arguments, his contentions are yet again addressed in detail below.

**A. Arroyo's motion for reconsideration is untimely**

Arroyo waited nearly five months—until after he was compelled to respond to the jurisdictional discovery and on the date those compelled responses were due—to seek reconsideration of this Court's March 27, 2026 order granting limited jurisdictional discovery. While Rule 54(b) permits this Court to reconsider interlocutory orders "at any time before the entry of judgment," Fed. R. Civ. P. 54(b), "this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Alex A. by & through Smith*, 2024 WL 1122430, at *4. A motion for reconsideration does not give a party "the right to continuously revisit the same issues." *DAC Surgical Partners P.A.,* 2017 WL 3484507, at *2. Arroyo's five-month delay, and his intervening repeated fight against this Court's orders in the meantime, filing a motion for reconsideration only when he has run out of other options, cuts against reconsideration because the delay is patently unreasonable. Arroyo already contested Plaintiff's motion for limited discovery and lost. ECF No. 9; ECF No. 13. He lost the motion to compel. ECF No. 48. He lost his Fifth Circuit emergency request for mandamus. *In re Arroyo*, No. 26-20495 (5th Cir. Sept. 4, 2026) (per curiam) (unpublished). Enough is enough.

**B. Arroyo fails to identify any reason for this Court to exercise its discretion to change its past orders**

Arroyo's repetition of past arguments and strawman arguments he presents as Plaintiffs' position underscore that his reconsideration motion is bereft of merit.

***1. Arroyo's personal jurisdiction question is not "purely legal," nor is the only relevant fact whether Arroyo was MSD's president.***

As he has previously, Arroyo argues that jurisdictional discovery was improper because the personal-jurisdiction question is "a purely legal question." ECF No. 53 at 8. He made that same argument back in March. ECF No. 9, at 19 ("Accordingly, there are no factual issues related to service. Or, to put it another way, there is no point to jurisdictional discovery. The issue is purely legal.").

Sensing the weakness of his position that the question of personal jurisdiction is purely legal, Arroyo quickly pivots to a new argument, asserting that the only fact relevant to Plaintiffs' theory for adequate representation is whether Arroyo was MSD's president during the relevant period, and that it was error to grant Plaintiffs discovery any broader than that. ECF No. 53 at 11–13. Arroyo badly mischaracterizes Plaintiffs' adequate representation theory, because he wants to limit the factual record to his title at MSD.

Why? Perhaps in part because the documents he hid from discovery show that Arroyo was the de-facto control person at MSD throughout the SDNY litigation, regardless of his nominal title. *See* ECF No. 28. For that reason, the untrustworthy, likely-falsified document presented by Arroyo purporting to remove him as MSD's president in January 2025, *see* ECF No. 53 at 12, even were it fully accurate and authentic, is of no moment. Regardless of his title, if Arroyo continued to direct MSD in the SDNY litigation to advance his own interests, MSD could still be found to have

adequately represented Arroyo's interests, which would preclude him from making the same jurisdictional arguments that MSD made and lost before Judge Rakoff. Plaintiffs' theory is premised on the nature of Arroyo's "role and responsibilities" at MSD, not merely his title. ECF No. 5 at 10; *see also* ECF No. 10 at 10 (seeking "discovery into his role with MSD"). As Plaintiffs explained in their original briefing for jurisdictional discovery, Plaintiffs' theory requires a fact-intensive inquiry into Arroyo's role and relationship with MSD, along with how that role and relationship was informed by Arroyo's interactions with other related entities like MDM, Grupo Lauman, and Fox Sports Mexico. *See* ECF No. 5 at 10; ECF No. 10 at 11.

The basis for that inquiry comes from the evidence and rulings in the SDNY court: Arroyo is CEO of Grupo Lauman, *Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, No. 1:25-cv-06703-JSR (S.D.N.Y.) ("SDNY Action"), ECF No. 42-1, Ex. D; Grupo Lauman controls Fox Sports Mexico, *Id.*, ECF No. 13-3 at 0013; MDM and MSD operate Fox Sports Mexico, *Id.* at 0006; and MSD does not have any interests that are distinguishable from MDM and Fox Sports Mexico. *Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, 801 F. Supp. 3d 217, 226 (S.D.N.Y. 2025). For that reason, the Court ordered discovery into the broader topic of Arroyo's relationship with MSD generally—not limited to his title, and not limited to his direct interactions with MSD (as opposed to interactions with MSD through other entities)—a point which Plaintiffs argued in their motion to compel. ECF No. 14, at 11.

Indeed, Arroyo admitted that he interacts with MSD through other entities. His lawyer represented to the Court that "Arroyo owns 99% of Grupo Lauman Holding, S. de R.L. de C.V., which in turn owns 95% of Altener, S.A. de C.V. Altener is MSD's sole member. . . . [Arroyo] does not have voting rights [in MSD]; only Altener does." ECF No. 17 at 8. That admission shows that one way Arroyo interacts with MSD is through a stack of companies, where he is the control person of all of them.

Because of that multi-layered structure, Plaintiffs sought discovery across the above-mentioned entities to the extent they shed light on Arroyo's relationship with MSD. Arroyo complains that Plaintiffs' jurisdictional discovery requests sweep too broadly, ECF No. 53, at 15-16, but, at bottom, his only complaint is that Plaintiffs have appropriately sought discovery into his complex corporate structure and have asked penetrating questions to learn the extent of his relationship with MSD. Inquiries into MSD's compensation to Arroyo, his interest in the Fox trademarks other than MSD's interest in them, and the merits of the trademark dispute, all of which Arroyo claims are out of bounds, *see* ECF No. 53, are relevant to Arroyo's relationship with MSD. MSD transferring assets to Arroyo is obviously probative of whether his interests are aligned with MSD's and whether he is using MSD as a shell to perpetuate his own interests. Non-MSD roles are relevant because, as discussed above, one way Arroyo interacts with MSD is through other entities he controls. Discovery into communications about this case would yield information about how the dubious MSD document purporting to strip him of the MSD

presidency came to exist (and when). And discovery into his interest in the Fox Sports trademarks is relevant to show how MSD's interest aligns with Arroyo's in the SDNY litigation.

Arroyo makes a few other ancillary arguments as to jurisdictional discovery, all of which are conclusory assertions that beg the question that jurisdictional discovery seeks to answer. First, he claims that a nonparty corporation cannot be the vehicle that binds a nonparty individual. ECF No. 53 at 11–12. It can: if MSD understood itself to be acting in a representative capacity for Arroyo or if the SDNY took care to protect Arroyo's interests in the proceeding, then the adequate representation doctrine would apply. *See Taylor v. Sturgell*, 553 U.S. 880, 900 (2008). The answer to the former question requires discovery; and the answer to the latter, is yes. *See* SDNY Action, ECF Nos. 45, 47, 98 (calling for multiple opportunities for Arroyo to present argument and be heard); SDNY Action, 9/5/2025 Minute Entry; *id.*, ECF No. 73 at 2–3 (holding hearing and issuing opinion on whether notice and service on Arroyo and other non-party contemnors was properly made).

Next, Arroyo contends that "representation of a corporation's interests is not representation of an officer's personal interests." ECF No. 53. That misses the point entirely. The inquiry is whether Arroyo exercised control over MSD such that MSD was representing Arroyo's interests. To determine if that transpired requires discovery.

Finally, Arroyo claims that an alignment of interests between Arroyo and MSD is absent because Arroyo is a citizen of Mexico and MSD is a Delaware LLC. Discovery will reveal those interests and whether they are aligned. Arroyo and MSD's location says nothing about whether MSD was directed to protect and represent Arroyo's interests in the SDNY litigation.

Accordingly, it was not error, much less manifest error, to grant jurisdictional discovery into "Arroyo's relationship with MSD" for the purpose of allowing Plaintiffs to investigate their adequate representation theory. *See, e.g.*, *ING Bank N.V. v. M/V Portland, IMO No. 9497854*, 2016 WL 3365426, at *6 (M.D. La. June 16, 2016) ("Since a court's jurisdiction over an alter ego is coextensive with its jurisdictional reach over the sham (or dummy) corporation, facts relevant to an alter ego analysis are ineluctably jurisdictional in nature"). That topic was consistent with the theory Plaintiffs presented, and Plaintiffs sought discovery within the scope of that topic.

***2. Plaintiffs made an adequate preliminary jurisdictional showing.***

Arroyo next argues that Plaintiffs made an inadequate preliminary jurisdictional showing. ECF No. 53 at 9. That is wrong. Arroyo conveniently ignores Plaintiffs' original briefing, which identifies the SDNY opinion that ruled (1) the SDNY authorized email service, (2) email service was permitted under Article 15(3) of the Hague Convention, and (3) Plaintiffs effected that service. ECF No. 5, at 15–

16. Arroyo never confronts the Article 15(3) argument in his original opposition to the motion for jurisdictional discovery or in his motion for reconsideration.[1]

Instead, Arroyo misstates the holding of *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 169 (2d Cir. 2025) ("*Smart Study*"). He contends that *Smart Study* stands for the proposition that email service is never allowed to a foreign defendant subject to the Hague Convention. ECF No. 53 at 11. That is wrong. *Smart Study* is a case where a plaintiff sought a default judgment against a foreign defendant that had been served via email under Rule 4(f)(3). *Smart Study*, 164 F.4th at 169. *Smart Study* concluded that email service was not permitted in those specific circumstances. *Id.* at 171–72. But the *Smart Study* court went on to distinguish the circumstances of that case from other scenarios arising under Article 15 of the Hague Convention. *Id.* at 167 ("Article 15 also preserves a judge's authority to 'order, in case of urgency, any provisional or protective measures.'"); *id.* at 173 (noting that plaintiff failed to explain how a default judgment is a provisional or protective measure).

Judge Rakoff distinguished the circumstances at hand in *Smart Study* from those before him. He concluded that, unlike the default judgment sought in *Smart*

[1] To the extent Arroyo now appears to be contending that the SDNY court lacked personal jurisdiction over Arroyo for reasons other than service, this new argument is meritless. The SDNY properly exercised jurisdiction over Arroyo by virtue of his having notice of the injunction and the contempt proceedings, because he had been served with those papers, and because he was legally identified with MDM. *See* SDNY Action, ECF No. 73. And to the extent Arroyo now argues that he was a "nonparty to the SDNY contempt matter," ECF No. 53 at 10, that is simply counterfactual. Arroyo is a nonparty to the SDNY litigation, but he was most certainly a party to the SDNY contempt proceedings. Plaintiffs' emergency motion was directed at him individually, among others; the SDNY court held Arroyo himself in contempt; and the SDNY court issued judgment against Arroyo himself. SDNY Action, ECF Nos. 42, 45, 107. This is not a case where Plaintiffs are trying to bind Arroyo to a judgment that was issued against some other entity. The SDNY judgment was issued against Arroyo personally.

*Study*, Plaintiffs sought enforcement of a TRO and preliminary injunction—quintessential provisional and protective measures. From there, he analyzed that the SDNY litigation as a case of urgency, and that contempt orders enforcing his injunction were protective and provisional in nature. SDNY Action, ECF No. 172 at 17–18. That decision, which Plaintiffs relied on as their preliminary showing of personal jurisdiction, ECF No. 5, at 12–13, more than satisfies their burden to obtain jurisdictional discovery. Arroyo comes nowhere close to establishing manifest error on that issue.

Arroyo next claims that Plaintiffs did not receive authorization to serve Arroyo via email. ECF No. 53 at 11. Not true again. In their request for jurisdictional discovery, Plaintiffs cited to Judge Rakoff's order on jurisdiction following the *Smart Study* decision. In that opinion, Judge Rakoff explained that the "Court again authorized plaintiffs to serve documents related to the emergency proceedings and the Court's orders by electronic mail." SDNY Action, ECF No. 172 at 6.

One of those instances in which Judge Rakoff authorized email service under Rule 4(f)(3) arose from Judge Rakoff's oral ruling on September 5, 2025, when Judge Rakoff addressed the fact that Arroyo's contempt order itself did not authorize email service:

> But if I never formally authorized the electronic service on the contempt motion, as opposed to the underlying TRO, then I think I will so authorize it, but it has to be done by early next week. And what you have to do in that service also is inform whoever you're serving that we are going to have a hearing for all of the third parties on the 18th.

Tucker Decl., Ex. A, 9/5/2025 Hearing Transcript, SDNY Action at 15:5–11. The next day, on September 6, 2025, Plaintiffs served Arroyo via email with the contempt order against him and all related papers. SDNY Action, ECF No. 50. And Judge Rakoff, upon reviewing the specific question of whether email service was properly effected, ruled on September 9, 2025 that "Pursuant to Federal Rule of Civil Procedure 4, the Court has repeatedly authorized electronic service in this action, including electronic service on Grupo Lauman and Arroyo of papers related to plaintiffs' motion to hold them in civil contempt"; that "Plaintiffs have presented unrebutted evidence that they personally served Arroyo, by electronic mail, with the Court's Order holding him in civil contempt"; and that the "Court concludes that such service is sufficient." SDNY Action, ECF No. 73 at 3. Plaintiffs plainly made the preliminary showing required for jurisdictional discovery.

### ***3. Plaintiffs made a preliminary showing of spoliation.***

Arroyo complains that the spoliation discovery ordered by this Court on August 3 lacks the proper predicate—a new argument that Arroyo did not raise in the motion to compel briefing. ECF No. 53, at 16–17. The Court has already considered the propriety of spoliation discovery, finding it warranted here. ECF Nos. 28, 48. Although Arroyo maintains that Plaintiffs have not laid a sufficient "predicate" to enable spoliation discovery, Arroyo cites no authority for the proposition that such a predicate is required. ECF No. 53, at 16–18. He only cites to Federal Rule of Civil Procedure 37(e), which describes the procedure for when Electronically Stored Information that should have been preserved is not. That rule

does not address the threshold question of when spoliation discovery is warranted to investigate whether a violation of Rule 37(e) has occurred, nor does he cite any authority that a certain predicate must be shown before spoliation discovery.

Nevertheless, Plaintiffs easily have made a preliminary showing of spoliation. In certain circumstances, parties may investigate "the adequacy of one another's preservation efforts through discovery," including when "the adequacy of a party's preservation efforts is in question." *Shufeldt v. Baker Donelson, Bearman, Caldwell and Berkowitz*, P.C., 2020 WL 1532323, at *10 (M.D. Tenn. Mar. 31, 2020). A party seeking spoliation-related discovery "need only make a preliminary showing of spoliation," which is far more "relaxed" a standard than the standard for spoliation sanctions. *Tracy v. NVR, Inc.*, 2012 WL 1067889, at *6 (W.D.N.Y. Mar. 26, 2012). Plaintiffs established that (1) Arroyo represented in his discovery responses that Arroyo claimed he had produced all responsive documents, ECF No. 17, at 22 ("Arroyo has fully and completely answered all legitimate discovery within the scope of discovery defined by the Order."), and (2) Arroyo at one point had responsive documents in his possession, custody, and control, yet did not produce them—including documents dated after August 29, 2025, the date by which his preservation obligations attached. ECF No. 28. That predicate was considered by the Court because it was clearly presented by Plaintiffs as a basis to grant its motion to compel, and it is plainly sufficient to warrant spoliation discovery.

Arroyo next contends that no preservation obligation ever attached to him. ECF No. 53, at 17. That argument also fails. The duty to preserve evidence arises

when a party knows or reasonably should know that evidence may be relevant to anticipated litigation. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010). The obligation reaches materials of individuals likely to hold discoverable information relevant to the claims or defenses at issue. *Id.* at 612-13. It is not just limited to parties themselves—it extends to custodians of potentially relevant and responsive information.

Plaintiffs demonstrated in the SDNY litigation that they confirmed the termination of MDM's license to use the Fox Sports trademarks on March 3, 2025. Thus, as the president of Fox Sports Mexico, *see* SDNY Action, ECF No. 42-1, Ex. D, and CEO of Grupo Lauman, the entity that controls Fox Sports Mexico, *see id.*; SDNY Action, ECF No. 13-3, at 14, litigation was reasonably foreseeable by Arroyo in March 2025. *See Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 341 (M.D. La. 2006) (preservation obligation extends not just to individuals who are parties, but also to all custodians likely to hold relevant information). Arroyo is not just a peripheral custodian; he is the "key player," *see Rimkus*, 688 F. Supp. 2d at 641–42, whose conduct is the subject of this dispute. Unsurprisingly then, a key player's preservation duty is not confined to claims asserted against him personally. In *Rimkus*, the defendants advanced the same scope-narrowing argument that Arroyo advances here, arguing that their preservation obligation was limited to materials relevant to the fiduciary-duty claim asserted against the corporate officer. *Rimkus*, 688 F. Supp. 2d at 641. The court called the argument "unpersuasive" and held that the obligation instead extended to the full set of reasonably anticipated claims

arising from the same course of conduct and reached the materials of the "key players" in the parties' litigation. *Id.* at 641-42. Accordingly, Arroyo's preservation obligations extended to, among other things, issues related to the use of the Fox Sports trademarks at that time, as he was a key player in that foreseeable litigation as the president of Fox Sports Mexico—the business unit that used the Fox Sports trademarks. *See* SDNY Action, ECF No. 42-1, Ex. D.

At absolute minimum, Arroyo's preservation obligations attached as of August 29, 2025 when Plaintiffs initiated contempt proceedings against him personally for acting in concert with MDM to violate the SDNY's injunction. At that point, there could be no question, with Plaintiffs seeking to impose judicial punishment on Arroyo, that he should have reasonably anticipated litigation. Arroyo thereafter had a duty to preserve documents and communications regarding his interactions with MSD, MDM, Fox Sports Mexico, and Grupo Lauman, among others, regarding the use of the Fox Sports trademarks; his documents and communications concerning the SDNY litigation; and any documents and communications relating to circumventing the SDNY's injunction or contempt sanctions, among other things. There is no error—much less manifest error—that Plaintiffs made the requisite preliminary showing to warrant spoliation discovery.[2]

[2] Arroyo contends in his motion that he lacks possession, custody, or control of many responsive documents. ECF No. 53, at 18–19. That is a red herring. It does not go to any aspect of demonstrating that the Court committed a manifest error of fact or law in issuing its orders. It simply is Arroyo laying additional cover for why he is ultimately not going to produce any documents.

### 4. *The Court properly found waiver of Arroyo's objections well beyond his three-day delay.*

Arroyo falsely claims that the only reason the Court waived his objections was because he inadvertently delayed providing them by three days. ECF No. 53, at 21. That is wrong, and the Court has already rejected that argument. Arroyo's attempt to characterize his waiver as merely due to a three-day delay grossly misstates the record and ignores all of Plaintiffs' arguments about why no good cause exists to excuse the delay and why waiver of the attorney-client privilege is warranted. *See De Hoyos v. Prime, Inc.*, 2015 WL 12803713, at *2 (S.D. Tex. Mar. 18, 2015) ("As a general rule, when a party fails to timely object to [discovery] requests, objections thereto are waived; however, the Court may allow an untimely objection to stand upon a finding of good cause."); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 2008 WL 2036816, at *5 (S.D. Tex. May 9, 2008) (a party's failure to timely object to document requests that arises in the context of bad faith or a larger strategy of obstruction indicates the absence of good cause).

The record clearly shows that Arroyo served untimely objections. The record also shows that Arroyo has engaged the discovery process in bad faith. As Plaintiffs demonstrated at length in their supplemental briefing in support of their motion to compel Arroyo to produce jurisdictional discovery, Arroyo possesses or should possess numerous responsive documents that Arroyo represented he did not have. That plainly shows bad faith in the discovery process.

Another example of bad faith: Arroyo claims now it was due to attorney inadvertence by miscounting days. But, as Plaintiffs already explained to the Court,

there was no inadvertence:. Plaintiffs met and conferred with Arroyo's counsel about the missed deadline. Rather than claim inadvertence, Arroyo's counsel insisted that his counting method was the correct one. Only after Plaintiffs brought their motion to compel did Arroyo's counsel claim mistake. Any belated efforts by Arroyo's counsel to claim misunderstanding of the Federal Rules "weighs heavily against a finding of excusable neglect." *Midwest Emps. Cas. Co. v. Williams*, 161 F.3d 877, 880 (5th Cir. 1998). The Fifth Circuit held that a district court abused its discretion by granting an extension of time based on an attorney's misreading of a time-limit set by the Federal Rules even when the district court had found that the intricacies of the Rule at issue were "a trap for the unwary." *Id.* The Court may forgive untimely responses due to inadvertence, but it is no error for the district court not to forgive untimely responses when the cause of the delay was attorney intransigence and negligence, not inadvertence. *See* ECF No. 19.

Still another example of bad faith: Arroyo also took the bad faith position that he was not president of MSD during the time period called for by Fox's discovery requests, and therefore he had no responsive documents on that basis. *Even if* the likely-fabricated document that claimed Arroyo was no longer president of MSD that he submitted in support of this position were not fabricated (and Plaintiffs explained at length all of the badges of fraud in that document that rendered it completely untrustworthy) ECF Nos. 9-1, 10, for the reasons articulated above, Arroyo would not suddenly lack responsive material because of a purported title change.

Suggesting as much is entirely bad faith, on top of the obviously egregious bad faith should the document be fabricated

Arroyo's bad faith continues to the present, as he moved for reconsideration of a ruling that occurred in March 2026 the day before he was required to comply with the Court's order compelling his compliance with Plaintiffs' discovery requests on August 17, 2026. ECF No. 53. The Court was justified in finding Arroyo had waived his objections, including his privilege objection.

***5. No other consideration, such as that of equity, fairness, or prejudice, warrants reconsideration***

Arroyo does not point to any new information, evidence, or equities that would merit reconsideration. He devotes only one authority-lacking sentence, which is itself a reiteration of his already repeated arguments, to describe the ostensible manifest injustice that will flow from allowing this Court's two prior decisions to stand. ECF 53, at 21 ("Compelling a nonparty who contests jurisdiction to answer sweeping merits- and asset-focused discovery labeled 'jurisdictional,' and forensic spoliation discovery resting on no threshold predicate—while forfeiting his objections for a three-day, good-faith delay—works a manifest injustice that Rule 54(b) empowers the Court to correct."). Arroyo's arguments are beyond insufficient to show that this Court should reconsider its prior rulings.

At bottom, Arroyo's motion for reconsideration is a simple regurgitation of arguments already made to and rejected by this Court. Arroyo devotes only one sentence that utterly lacks in authority to support his contention that those prior rulings will cause manifest injustice, ECF No. 53, at 21, and given Arroyo's

consistent display of bad faith, there can be no manifest injustice or any prejudice by requiring him to engage in the court-ordered discovery at issue. This Court has already recognized the obvious—jurisdictional discovery is needed for Plaintiffs to be able to fully respond to Arroyo's Rule 60 motion. And where Arroyo clearly has not produced all responsive documents, this Court was correct in ordering spoliation and diligent-search discovery.

## V. CONCLUSION

Arroyo fails to offer any argument that would merit a grant of his disfavored motion for reconsideration. His motion for reconsideration should be denied.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: *_/s/Marcus R. Tucker_*
Marcus R. Tucker
Federal Bar No. 12769
State Bar No. 20282360
1001 Fannin St., Ste. 2200
Houston, Texas 77002
Telephone: 713-626-1386
Telecopier: 713-626-1388
Email: marcus.tucker@phelps.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

**OF COUNSEL:**

**PHELPS DUNBAR LLP**
D. Michael Hurst, Jr.**
MSB No. 99990

1905 Community Bank Way, Ste. 200
Flowood, MS 39232
Telephone: 601-352-2300
***Admitted Pro Hac Vice*

**STEPTOE LLP**
Katherine A. Petti**
kpetti@steptoe.com
Christopher T. Berg (Bar No. 24082682)
cberg@steptoe.com
633 West Fifth Street. Ste. 1900
Los Angeles, CA 90071
Telephone: 213-439-9400
***Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send electronic notice of such filing to all counsel of record.

*/s/Marcus R. Tucker*
Of Phelps Dunbar LLP