# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX CORPORATION, et al.,<br><br>Plaintiffs,<br><br>-v-<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | 25-cv-6703 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

Before the Court is the renewed motion of plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC for an order imposing civil confinement on non-party contemnor Manuel Arroyo. See ECF No. 280. For the reasons that follow, the plaintiffs' motion is hereby granted.

**I. Background**

The Court assumes familiarity with the factual background and procedural history of this action, which the Court has now recounted, seriatim, over several decisions. See Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., 801 F. Supp. 3d 217, 220-25 (S.D.N.Y. 2025) ("MDM I"); Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., 808 F. Supp. 3d 642, 649-53 (S.D.N.Y. 2025) ("MDM II"); Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., 820 F.Supp.3d 299, 300-05 (S.D.N.Y. Feb. 17, 2026) ("MDM III"); Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., No. 25-CV-6703 (JSR), 2026 WL 810431 (S.D.N.Y. Mar. 23, 2026) ("MDM IV"); Fox Corp. v. Media Deportes

Mexico, S. de R.L. de C.V., 827 F. Supp. 3d 498, 503-04 (S.D.N.Y. 2026) ("MDM V").[1]

In brief, in August 2025, this Court imposed civil contempt sanctions jointly and severally on Arroyo, defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM"), non-party Grupo Lauman Holding, S. de R.L. de C.V. ("Grupo Lauman"), and non-party Mexico Sports Distribution LLC ("MSD"). See ECF Nos. 44-45. These sanctions consisted of a fine of $200,000 per day and were imposed because the Court concluded that the co-contemnors violated the Court's earlier temporary restraining order. See ECF Nos. 42-45. To date, Arroyo, MDM, and Grupo Lauman have not appeared in this Court.

MSD appeared in this action on September 5, 2025, and moved to set aside the contempt order. See ECF No. 45. Accordingly, the Court entered a temporary stay of the civil contempt sanctions as to MSD, Grupo Lauman, and Arroyo. See ECF Nos. 47-48. On September 9, the Court lifted the stay as to both Arroyo and Grupo Lauman but left the stay in place as to MSD. See ECF No. 73. The Court also "enjoin[ed] MDM, Grupo Lauman, and Arroyo from transferring, conveying, or otherwise dissipating any assets or causing anyone else from transferring, conveying, or otherwise dissipating any assets, located in the United States that they possess, own, or otherwise control,

[1] Except where otherwise indicated, all quotations in this Opinion omit citations, quotation marks, footnotes, brackets, ellipses, and other non-substantive alterations in source material.

including assets in any bank account maintained in the United States." Id. at 8.

Ten days later, on September 19, 2025, the Court denied MSD's motion to set aside the contempt order but left the stay in place of contempt sanctions in place. ECF No. 95. The Court also imposed a substantially identical injunction to the one it imposed against MDM, Grupo Lauman, and Arroyo. Id. at 2; see generally MDM I (explaining the reasoning for the Court's order). On October 30, the Court again denied MSM's renewed motion to set aside the contempt order and lifted the stay of contempt sanctions as to MSD. See generally MDM II. The Court again reaffirmed that decision on February 17, 2026. See generally MDM III. Finally, in April 2026, the Court held MSD in further contempt for dissipating its assets in violation of the Court's September 19 Order and appointed a Receiver. See ECF Nos. 227, 227; see generally MDM V.[2]

Separately, on March 13, 2026, the plaintiffs moved for an order imposing civil confinement on Arroyo on the grounds that he "continue[d] to willfully defy the Court's injunction and contempt orders." ECF No. 200. While the Court found that the co-contemnors had acted in "flagrant defiance of the Court's authority," the Court nevertheless "conclude[d] that civil confinement [was] not yet

[2] The Court later also held MDM in further contempt and appointed a Receiver over MDM as well. See ECF No. 289.

warranted" at that time. MDM IV, at *2. The Court denied the plaintiffs' motion without prejudice to later renewing the motion "should additional circumstances so warrant." Id. at *3. The plaintiffs now renew their motion to impose civil confinement on Arroyo.[3] ECF No. 280.

## II. Analysis

District courts have both the inherent and statutory authority to order civil confinement as a sanction for civil contempt. See MDM IV, at *2; 18 U.S.C. § 401(3). As this Court explained when considering the plaintiffs' first motion for civil confinement, "the Court "must consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." MDM IV, at *2. The Court is mindful that "in selecting contempt sanctions, [it] is obliged to use the least possible power adequate to the end proposed." Spallone v. United States, 493 U.S. 265, 276 (1990). And ultimately, "[e]ven where all these factors are present, the decision to impose civil confinement – like the imposition of any sanction for civil contempt – ultimately turns on whether the coercive sanction is reasonable in relation to the facts, which is a matter in the Court's discretion." MDM IV, at *2.

[3] On October 23, 2026, the plaintiffs filed a supplemental brief in support of their motion for civil confinement. See ECF No. 296.

In March of 2026, this Court concluded that Arroyo's conduct "represent[ed] flagrant defiance of the Court's authority." Id. To that point, Arroyo and his co-contemnors' conduct included (1) continued use of the trademarks at issue in this case; (2) pursuing litigation against the plaintiffs in Mexico; (3) conveying Arroyo's real property for nominal consideration." See id. Since then, evidence of Arroyo's severe contumacy has grown considerably.

Between September 19, 2025, and March 31, 2026, MSD made over 100 transfers out of its accounts totaling over $12 million. See ECF No. 278-1. This was in violation of the Court's asset freeze order. See ECF No. 95. Additionally, the MSD Receiver produced evidence that, after this Court's asset freeze order, MSD attempted to reach agreements with third parties that would redirect payments to MDM rather than MSD. See ECF Nos. 274-2, 274-5, 274-6 & 285-3. There is also evidence that MSD attempted to back-date a draft agreement with a third party to make it appear the document had been signed prior to the Court's September 2025 asset freeze order. See ECF No. 274-5.

Moreover, and crucially, the Court concludes that Arroyo was personally involved in directing the foregoing attempts to defy the Court's orders. On August 11, 2026, this Court ordered an adverse inference sanction which provided that, "[f]or all purposes in this action, until and unless MSD and Arroyo purge their contempt, the Court will deem the following as an established fact: Manuel Arroyo personally directed and caused MSD to transfer its assets after

September 19, 2025." ECF No. 266, at 2. Further, there is now evidence of Arroyo's personal involvement in the attempts to redirect payments from MSD to MDM. See ECF No. 285-3.

Taken together, there is sufficient basis to hold Arroyo personally responsible for MSD's blatant and egregious disregard of this Court's authority. The Court therefore concludes that the first factor — the character and magnitude of the harm threatened by the continued contumacy — weighs strongly in favor of imposing a civil confinement sanction.[4]

The Court turns next to the second required factor — the probable effectiveness of the sanction in bringing about compliance. It is still the Court's view that it is "unlikely that Arroyo would risk civil confinement by traveling to the United States should the Court grant plaintiffs' motion." MDM IV, at *3. However, it is obvious that lesser sanctions have been ineffective. Indeed, the Court's attempts to bring about compliance through lesser sanctions may have been worse than ineffective, as they afforded Arroyo and the co-contemnors with over a year to attempt to move assets out of this Court's reach. And, as the plaintiffs point out, Arroyo has personal and professional ties to the United States that give added coercive force to what "amounts,

---

[4] MDM has also sought, and the Fifty-Fourth Civil Court in Mexico City has now issued, an order prohibiting the plaintiffs, as well as a range of other entities, from complying with, or giving effect to, this Court's order appointing a receiver over MDM. See ECF Nos. 296-2, 296-3. This bald and blatant contumacy also weighs in favor of further sanctions.

in effect, to the threat of civil confinement upon entry into the United States." Citibank, N.A. v. Aralpa Holdings Ltd. P'ship, No. 1:22-CV-08842 (JLR), 2026 WL 1759028, at *5 (S.D.N.Y. June 18, 2026) (emphasis added); see ECF No 284, at 21-22. The Court therefore concludes that the second factor favors imposition of a civil confinement sanction.

Finally, as the Court previously concluded, "even the substantial financial sanctions that have already accrued against Arroyo are likely to represent a small fraction of his overall wealth and, therefore, may not significantly burden him." MDM IV, at *3. While a civil confinement sanction is very serious, Arroyo "has engaged in an extended campaign of obfuscatory and even deceptive conduct in an attempt to avoid" the obligations imposed on him and the co-contemnors by this Court. United States v. Chusid, 372 F.3d 113, 117 (2d Cir. 2004). This conduct has continued unabated despite the Court's escalating imposition of less coercive sanctions.

Accordingly, the Court concludes that all three of the foregoing factors support the imposition of civil confinement against Arroyo in this case. Additionally, for the reasons amply discussed above, the Court concludes that civil confinement – or, in effect, the threat of civil confinement should Arroyo enter the United States – is reasonable in relation to the facts of this case. The Court therefore orders that Arroyo, if found within the jurisdiction of the United States, shall be immediately arrested and held in confinement until such time as he

complies with the Court's orders of September 5 and September 19, 2025. See ECF Nos. 49 & 95. Counsel for the plaintiffs shall consult with the U.S. Marshals Service as promptly as possible as to the means of effectuating this order. Meanwhile, the Clerk of Court is respectfully directed to terminate the motion at Docket Entry No. 280.

SO ORDERED.

New York, New York
October 26, 2026

JED S. RAKOFF, U.S.D.J.